UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
----------------------------------------------------------------------- X
MATTHEW MILLER, Individually and as Principal of          :
STRATEGIC RISK LLC,                                                        Index No. 1:25-cv-08606-LAK
                                                                                     :
                                 Plaintiff,
                                                                                     :
                        -against-
                                                                                     :
1847 HOLDINGS LLC, 1847 PARTNERS LLC,
ELLERY W. ROBERTS, LOUIS A. BEVILACQUA,          :
BEVILACQUA PLLC, and VERNICE HOWARD,
                                                                                     :
                                 Defendants.
----------------------------------------------------------------------- X

# Memorandum of Law

# In Support of Defendants Louis A. Bevilacqua's and Bevilacqua PLLC'S

# Motion to Dismiss

Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Attorneys for defendants Louis A. Bevilacqua and Bevilacqua PLLC
150 East 42nd Street
New York, New York 10017
(212) 490-3000

## <u>TABLE OF CONTENTS</u>

**Page**

Preliminary Statement.................................................................................................. 1

Summary of the Facts (as Alleged)............................................................................. 2

Legal Standards........................................................................................................... 4

    I      The 12(b)(6) Motion to Dismiss Standard ........................................ 4

          a.     Generally............................................................................... 4

          b.     Securities Fraud Claims ....................................................... 5

    II     Securities Fraud Claims ................................................................... 5

          a.     Statute of Limitations for Claims under the Securities Exchange Act
                    ................................................................................... 5

          b.     The Elements of a Securities Fraud Claim .......................... 5

                i)     Material Misstatement ............................................. 6

                ii)    Scienter ................................................................... 7

                iii)   Connection to Securities ......................................... 7

                 iv)   Reliance .................................................................. 7

                 v)    Causation ................................................................ 7

                vi)   Damages .................................................................. 8

          c.     Forward Looking Statement Defense ........................................ 8

          d.     Group Pleading Doctrine ....................................................... 8

    III    Scheme Liability Claims.................................................................. 9

    IV    Control Person Liability................................................................... 9

    V     Common-Law Fraud ...................................................................... 10

Argument .................................................................................................................... 11

    I      The Securities Claims are Time Barred............................................ 11

    II     The Facts do not Sustain a Claim for Securities Fraud....................... 12

          a.     There is no Material Misstatement of Fact that Would Support the
              Securities Fraud Cause of Action ........................................... 12

i

|  | b. | Miller Does Not Allege Sufficient Facts to Establish Scienter.................. 14 |
|  | c. | There is no Connection to the Sale of Securities ....................................... 15 |
|  | d. | Reliance is Absent......................................................................................... 16 |
|  | e. | Causation is also an Impossibility................................................................ 16 |
|  | f. | The Forward-Looking Statements are Safe Harbored under the PSLRA ............................................................................................................. 17 |
| III | | Scheme Liability is Absent ........................................................................................... 18 |
| IV | | Control-Person Liability does not Exist...................................................................... 19 |
| V | | Common-Law Fraud is Unsustainable......................................................................... 21 |

Conclusion ...................................................................................................................................... 21

329838030v.1

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Acito v. IMCERA Group*,
47 F.3d 47 (2d Cir. 1995) ...................................................................14

*Acticon AG v. China N. E. Petroleum Holdings, Ltd.*,
692 F.3d 34 (2d Cir. 2012)...................................................................8

*Armstrong v. McAlpin*,
699 F.2d 79 (2d Cir. 1983)...................................................................5

*Ashcroft v. Iqbal*,
556 U.S. 662, 129 S. Ct. 1937 (2009) ..................................................4

*ATSI Communs., Inc. v. Shaar Fund, Ltd.*,
493 F.3d 87 (2d Cir. 2007)...........................................................5, 9, 19

*In re Barrick Gold Corp. Sec. Litig.*,
341 F.Supp.3d 358 (Hon. Naomi Buchwald, U.S.D.J., Sep. 20, 2018
S.D.N.Y.) ...............................................................................18

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544, 127 S. Ct. 1955 (2007)...................................................5

*Brown Media Corp. v. K&L Gates, LLP*,
854 F.3d 150 (2d Cir. 2017)...................................................................4

*Brown v. Cerberus Capital Mgt., L.P.*,
703 F.App'x 11 (2d Cir. 2017)...................................................................6

*Chadbourne & Parke LLP v. Troice*,
571 U.S. 377, 134 S. Ct. 1058 (2014)...................................................7

*In re Citigroup, Inc. Sec. Litig.*,
330 F.Supp.2d 367 (Hon. Laura Swain, U.S.D.J., Aug. 10, 2024, S.D.N.Y.)........................15

*Cohen v. Koenig*,
25 F.3d 1168 (2d Cir. 1994)...................................................................10

*Collins v. Northeast Grocery, Inc.*,
149 F.4th 163 (2d Cir. 2025) ...................................................................2

*Dodds v Cigna Sec., Inc.*,
12 F.3d 346 (2d Cir. 1993)...........................................................5, 11

329838030v.1

*ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*,
553 F.3d 187 (2d Cir. 2009)............................................................................5

*In re Eletrobras Sec. Litig.*,
245 F.Supp.3d 450 (Hon. John Koeltl, U.S.D.J., March 25, 2017, S.D.N.Y.) ......................19

*Faber v. Metro. Life Ins. Co.*,
648 F.3d 98 (2d Cir. 2009)............................................................................4

*Friedman v. Arizona World Nurseries LP*,
730 F.Supp. 521 (Hon. Kenneth Conboy, U.S.D.J. Jan 24, 1999, S.D.N.Y.)........................13

*In re Fyre Festival Litig.*,
399 F.Supp.3d 203 (Hon. Castel, U.S.D.J., July 10, 2019, S.D.N.Y.) ..................................21

*In re Global Crossing, Ltd. Sec. Litig.*,
2005 U.S.Dist.LEXIS 26942 (Hon. Gerard Lynch, U.S.D.J Nov. 4, 2005,
S.D.N.Y) ....................................................................................................20

*In re Health Mgmt., Inc., Sec. Litig.*,
970 F.Supp. 192 (Hon. Spatt, U.S.D.J., Feb. 5, 2026, S.D.N.Y.)............................................15

*Hoffman v. TD Waterhouse Inv. Servs.*,
148 F.Supp.2d 289 (Hon. Michael Mukasey, U.S.D.J., June 20, 2021,
S.D.N.Y) ....................................................................................................16

*IKB Intl. S.A. in Liquidation v Bank of Am. Corp.*,
584 F App'x 26 (2d Cir. 2014) .....................................................................10, 21

*Integrated Media Resources, LLC v. Morley*,
No. 22-967, 2023 U.S. App. LEXIS 2008 (2d Cir. 2023) ...................................................16

*Janus Capital Group, Inc. v. First Derivative Traders*,
564 U.S. 135, 131 S. Ct. 2296 (2011)..............................................................6, 12

*Kalnit v. Eichler*,
264 F.3d 131 (2d Cir. 2001)...........................................................................14

*Lama Holding Co. v Smith Barney Inc.*,
88 NY2d 413 (1996) .....................................................................................10

*Lawrence v. Cohn*,
325 F.3d 141 (2d Cir. 2003)...........................................................................15

*Lentell v. Merrill Lynch & Co.*,
396 F.3d 161 (2d Cir. 2005)...........................................................................7, 8, 17

329838030v.1

*In re Marsh & McLennan Cos. Sec. Litig.*,
   501 F.Supp.2d 452 (Hon. Shirley Kram, U.S.D.J., July 19, 2006, S.D.N.Y.).........................19

*Marshall v. Capital Growth Co. (In re Bernard L. Madoff Inv. Sec. LLC)*,
   818 F.App'x 48 (2d Cir. 2020) .....................................................................................10, 20

*McEssy v. Gray*,
   5:15-CV-1462, 2016 U.S. Dist LEXIS 197907 (Hon. David Hurd, U.S.D.J.,
   Aug 11, 2016, N.D.N.Y.)................................................................................................12

*McIntire v. China Mediaexpress Holdings, Inc.*,
   927 F.Supp.2d 105 (Hon. Victor Marrero, U.S.D.J., Feb. 28, 2013, S.D.N.Y.)....................20

*Menaldi v. Och-Ziff Capital Mgt. Group LLC*,
   164 F.Supp.3d 568 (Hon. Paul Oetken U.S.D.J., Feb. 17, 2016 S.D.N.Y.) ...........................18

*Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgt. LLC*,
   595 F.3d 86 (2d Cir. 2010)..............................................................................................6

*Pac. Inv. Mgt. Co. LLC v. Mayer Brown LLP*,
   603 F.3d 144 (2d Cir. 2010)........................................................................................9, 12

*Pettaway v. Natl. Recovery Solutions*,
   LLC, 955 F.3d 299 (2d Cir. 2020) ...................................................................................4

*Plumber & Steamfitters Local 773 Pension Fund, Boston Retirement Sys. v.
   Danske Bank A/S*,
   11 F.4th 90 (2d Cir. 2021) .....................................................................................9, 13, 18

*Premium Mtge. Corp. v. Equifax Info. Servs., LLC*,
   583 F.3d 103 (2d Cir. 2009).........................................................................................10

*Revitalizing Auto Communities Envtl. Response Trust v. Natl. Grid USA*,
   92 F.4th 415 (2d Cir 2024) ............................................................................................3

*Rolon v. Henneman*,
   517 F.3d 140 (2d Cir. 2008)...........................................................................................4

*Rombach v. Chang*,
   355 F.3d 164 (2d Cir. 2004)..........................................................................................18

*Saxe v. E.F. Hutton & Co.*,
   789 F.2d 105 (2d Cir. 1986)......................................................................................15, 16

*SEC v. Rio Tinto PLC*,
   41 F.4th 47 (2d Cir. 2022) ...........................................................................................18

v

*In re ShengdaTech, Inc. Sec. Litig.*,
    11 Civ. 1918 (LGS), 2014 US Dist LEXIS 112190 (Hon. Lorna G. Schofield,
    U.S.D.J., Aug. 12, 2014 S.D.N.Y) ........................................................................................9

*Singh v. Cigna Corp.*,
    918 F.3d 57 (2d Cir. 2019) ................................................................................................13

*Slayton v. Am. Express Co.*,
    604 F.3d 758 (2d Cir. 2010) ..........................................................................................7, 14

*Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*,
    552 U.S. 148, 128 S. Ct. 761 (2008) ..................................................................6, 7, 16, 19

*Wyo. State Treas. v. Moody's Invs. Serv. (In re Lehman Bros. Mtge.-Backed Sec.
    Litig.)*,
    650 F.3d 167 (2d Cir. 2011) ..............................................................................................20

**Statutes**

15 U.S.C.A. § 78j ........................................................................................................5, 12

28 U.S.C.S. §1658 (b) ........................................................................................................5

15 U.S.C. § 78t(a) ..............................................................................................................9

15 U.S.C. § 78u-4(b)(2) ................................................................................................7, 14

15 U.S.C. § 78u-5(i)(1) ....................................................................................................18

15 U.S.C. § 78u-5(c)(1) ......................................................................................................8

Private Securities Litigation Reform Act (PSLRA) ............................................5, 8, 17, 18, 19

Securities Exchange Act ................................................................................................5, 11

Securities Exchange Act § 20(a) ....................................................................................4, 9

Securities Exchange Act § 10(b) ........................................................................4, 5, 6, 7, 16

17 C.F.R. § 240.10b-5 ....................................................................................................6, 9

17 C.F.R. § 240.12b-2 ......................................................................................................10

17 CFR § 240.10b-5(b) ....................................................................................................12

Fed. R. Civ. P. 9(b) ......................................................................................................5, 10

Fed. R. Civ. P. 10b-5 ..................................................................................................4, 5, 9

Fed. R. Civ. P. 10b-5(a) ........................................................................................................4, 9

Fed. R. Civ. P. 10b-5(c) ........................................................................................................4, 9

Fed. R. Civ. P. 12(b)(6) .........................................................................................................1, 4

# Preliminary Statement

Defendants Louis A. Bevilacqua and Bevilacqua PLLC ("the Bevilacqua defendants"), by and through their attorneys, submit this memorandum of law in support of their motion to dismiss pursuant to FRCP 12(b)(6), for the plaintiff's failure to state a claim.

Plaintiff Matthew Miller lost money on his purchase of the co-defendant 1847 Holdings' stock and is now suing the company's counsel, the Bevilacqua defendants, for that loss. Miller had no contact with the Bevilacqua defendants until after he completed all stock purchases. It was then that the Bevilacqua defendants, on behalf of 1847 Holdings, responded to an audit request from Miller. Given the timing of these interactions, it is evident that Miller did not rely on the Bevilacqua defendants' representations in his purchase of 1847 Holdings stock. Further, the Bevilacqua defendants are not alleged to have made (and did not make) any statements to Miller that would qualify as the predicate for fraud, rendering Miller's securities fraud case unsustainable.

The complaint against the Bevilacqua defendants is not salvaged by Miller's attempts to attribute the actions of co-defendants to the Bevilacqua defendants on an agency theory. As Miller acknowledges, the Bevilacqua defendants were counsel to 1847 Holdings. If there was any power in one to direct the other, it would have rendered 1847 the principal, not the agent. Nor would the press releases and personal assurances by 1847 Holdings' principals qualify as fraudulent statements sufficient to support Miller's claims against the Bevilacqua defendants.

Consequently, the complaint against the Bevilacqua defendants must be dismissed.

# Summary of the Facts (as Alleged)

Because this is a 12(b)(6) motion, we adopt Miller's recitation of the facts in the operative (second amended) complaint[1]. *Collins v. Northeast Grocery, Inc.*, 149 F.4th 163, 170 (2d Cir. 2025).

--- *Miller's Purchase (and Sale) of 1847 Holdings Stock*

Miller began purchasing shares from 1847 Holdings in June 2023. Complaint ¶ 18. Miller had exchanged messages with 1847 Holdings' CEO, Ellery Roberts ("Roberts"), where Roberts assured Miller that 1847 Holdings would perform well. Complaint ¶ 15, 17. Miller claims that it was in reliance on these representations, together with 1847 Holdings' press releases and projections of expected revenue, that he purchased the stock. Complaint ¶ 12, 15, 17.

In their communications, Roberts had assured Miller that the company would not participate in future dilutive offerings and reverse stock splits. Complaint ¶ 19, 54. Despite this, Miller alleges, 1847 Holdings did numerous equity raises, reverse stock splits, and dilutive offerings that devalued Miller's position in the company. Complaint ¶ 31, 37, 42, 43, 57. Miller further alleges that Roberts assured him on August 28, 2023 that 1847 Holdings would not conduct a reverse stock split, but 1847 Holdings proceeded to announce that it would implement a reverse stock split on September 1, 2023. Complaint ¶51-60.

Miller's position was further devalued, he argues, in response to 1847 Holdings' default on debt that resulted in default notices and triggered mandatory equity conversions. Complaint ¶ 45-46. Miller claims that these defaults reveal that Roberts' previous statements regarding 1847 Holding's projected revenue and plans to not participate in offerings were misrepresentations.

---

[1] Plaintiff's second amended complaint is attached as exhibit A.

Complaint ¶47, 50. Miller claims that the timing and uniformity of the default notices indicates that 1847 Holdings coordinated the default declarations with their lenders. Complaint ¶45.

Miller contends that he ultimately had to sell the stock at a steep loss after a reverse stock split that occurred on September 1, 2023. Complaint ¶ 60-62. Miller alleges that he sold his position in 1847 Holdings during the week of September 11, 2023 at a loss of $749,461.90. Complaint ¶ 62.

None of this had anything to do with the Bevilacqua defendants.

--- *The Bevilacqua Defendants' Limited Role*

Even according to Miller, the Bevilacqua defendants had no contact with Miller until September 14, 2023. This contact was prompted by Miller writing to 1847 Holdings, on September 11, 2023, to request that it conduct an "internal forensic audit," which audit Miller simultaneously proposed should be done by "an independent party." Complaint ¶ 63.

It was in response to these demands that Miller's first contact with the Bevilacqua defendants occurred: it was the Bevilacqua defendants who responded to Miller's demand. Complaint ¶ 64. The Bevilacqua defendants' response identified Miller's demand as hostile and improper, and ultimately rejected Miller's request. Complaint ¶ 65, complaint ex. I[2]. This response (which Miller annexed to his complaint) referred Miller to existing, public, prior audits. Complaint, ex. I. Miller claims that in later exchanges with the Bevilacqua defendants, they threatened him in an effort to intimidate him and deter his further inquiries regarding 1847 Holdings. Complaint ¶64-67. Among these claimed threats, Miller alleges that the Bevilacqua defendants threatened him with the possibility of jail time for recording phone conversations Miller had had with 1847 Holdings' CEO. Complaint ¶66. Miller also alleges that the Bevilacqua

---

[2] Materials annexed to a complaint are properly considered by a court on a 12(b)(6) motion. *Revitalizing Auto Communities Envtl. Response Trust v. Natl. Grid USA*, 92 F.4th 415, 436 (2d Cir 2024).

defendants exercised control over 1847 Holdings because they are equity holders in 1847

Partners LLC, the "external manager" of 1847 Holdings. Complaint ¶107.

--- *Miller's Complaint*

Miller filed the second amended complaint on November 24, 2025, against 1847

Holdings, Ellery Roberts, 1847 Partners, Vernice Howard (1847 Holdings' CFO) and the

Bevilacqua defendants.

The complaint contains four causes of action: (1) a claim of securities fraud and

violations of Section 10(b) of the Securities Exchange Act and Rule 10b-5 against all defendants,

(2) a claim of scheme liability and violations of Section 10(b) and Rule 10b-5(a) and (c) against

all defendants, (3) a claim of control-person liability under Section 20(a) of the Securities

Exchange Act against Roberts, Howard, 1847 Partners, and the Bevilacqua defendants, and (4) a

claim of common law fraud against all defendants.

## Legal Standards

### I    The 12(b)(6) Motion to Dismiss Standard

#### a.    Generally

When considering a motion to dismiss pursuant to Rule 12(b)(6), courts must "accept[]

the complaint's factual allegations as true and draw[] all reasonable inferences in the plaintiff's

favor." *Pettaway v. Natl. Recovery Solutions*, LLC, 955 F.3d 299, 304 (2d Cir. 2020), quoting

*Brown Media Corp. v. K&L Gates, LLP*, 854 F.3d 150, 156-57 (2d Cir. 2017).

That being said, courts are not "bound to accept conclusory allegations or legal

conclusions masquerading as factual conclusions." *Faber v. Metro. Life Ins. Co.*, 648 F.3d 98 (2d

Cir. 2009), quoting *Rolon v. Henneman*, 517 F.3d 140, 149 (2d Cir. 2008). Moreover, when "a

complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the

line between possibility and plausibility of entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662,

678, 129 S. Ct. 1937, 1949 (2009) (internal quotation marks omitted), citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955 (2007).

### b. Securities Fraud Claims

"Any complaint alleging securities fraud must satisfy the heightened pleading requirements of the [Private Securities Litigation Reform Act] and Fed. R. Civ. P. 9(b) by stating with particularity the circumstances constituting fraud." *ECA & Local 134 IBEW Joint Pension Trust of Chicago v. JP Morgan Chase Co.*, 553 F.3d 187, 196 (2d Cir. 2009).

"A securities fraud complaint based on misstatements must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *ATSI Communs., Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 99 (2d Cir. 2007).

## II  Securities Fraud Claims

### a. Statute of Limitations for Claims under the Securities Exchange Act

Claims brought pursuant to the Securities Exchange Act are subject to a 2-year discovery statute. 28 U.S.C.S. §1658 (b) (stating that under the Securities Exchange Act suit must be commenced by the earlier of "(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation.").

"A plaintiff in a federal securities case will be deemed to have discovered fraud for purposes of triggering the statute of limitations when a reasonable investor of ordinary intelligence would have discovered the existence of the fraud." *Dodds v Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993), citing *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983).

### b. The Elements of a Securities Fraud Claim

Section 10(b) of the Securities Exchange Act makes it "unlawful for any person . . .to use or employ, in connection with the purchase or sale of any security . . .any manipulative or deceptive device or contrivance."15 U.S.C.A. § 78j.  Rule 10b-5 was promulgated pursuant to

5

this section and "makes it unlawful (a) [t]o employ any device, scheme, or artifice to defraud, (b) [t]o make any untrue statement of a material fact or to omit to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, or (c) [t]o engage in any act, practice, or course of business which operates or would operate as a fraud or deceit upon any person, in connection with the purchase or sale of any security." *Stoneridge Inv. Partners, LLC v. Scientific-Atlanta, Inc.*, 552 U.S. 148, 156-157,  128 S. Ct. 761, 768 (2008) (internal quotation marks removed), quoting 17 C.F.R. § 240.10b-5.

The elements of a §10(b) private action are "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." S*toneridge Inv. Partners,* 552 U.S. at 157, 128 S. Ct. at 768.

### i) Material Misstatement

A statement is material if there is "a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available." *Brown v. Cerberus Capital Mgt., L.P.*, 703 F.App'x 11, 14 (2d Cir. 2017), quoting *Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgt. LLC*, 595 F.3d 86, 92 (2d Cir. 2010).

In addition, the defendant must be the "maker" of the statement at issue. *Janus Capital Group, Inc. v. First Derivative Traders*, 564 U.S. 135, 142, 131 S. Ct. 2296, 2302 (2011) (internal quotation marks and citations omitted). "[T]he maker of a statement is the person or entity with ultimate authority over the statement." *Id.* Conversely, "[o]ne who prepares or publishes a statement on behalf of another is not its maker." *Id.*

6

### ii) Scienter

A complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010), quoting 15 U.S.C. § 78u-4(b)(2).

"Under this heightened pleading standard for scienter, a complaint will survive . . . only if a reasonable person would deem the inference of scienter cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* (internal quotation marks removed).

### iii) Connection to Securities

Plaintiff must establish "a connection between the misrepresentation or omission and the purchase or sale of a security." S*toneridge Inv. Partners,* 552 U.S. at 157, 128 S. Ct. at 768. "A fraudulent misrepresentation or omission is not made in connection with such a purchase or sale of a covered security unless it is material to a decision by one or more individuals (other than the fraudster) to buy or to sell a covered security." *Chadbourne & Parke LLP v. Troice*, 571 U.S. 377, 134 S. Ct. 1058, 1066 (2014) (internal quotation marks removed).

### iv) Reliance

"Reliance by the plaintiff upon the defendant's deceptive acts is an essential element of the § 10(b) private cause of action. It ensures that, for liability to arise, the requisite causal connection between a defendant's misrepresentation and a plaintiff's injury exists as a predicate for liability." *Stoneridge Inv. Partners,* 552 U.S. at 159, 128 S. Ct. at 770. (internal quotation marks removed).

### v) Causation

"It is long settled that a securities-fraud plaintiff must prove both transaction and loss causation." *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 172 (2d Cir. 2005) (internal quotation marks removed). "Transaction causation is akin to reliance, and requires only an allegation that

7

but for the claimed misrepresentations or omissions, the plaintiff would not have entered into the detrimental securities transaction." *Id.* (internal quotation marks removed). "Loss causation is the causal link between the alleged misconduct and the economic harm ultimately suffered by the plaintiff . . . to establish loss causation, a plaintiff must allege . . . that the subject of the fraudulent statement or omission was the cause of the actual loss suffered." *Id.* at 172-173 (internal quotation marks and citations removed).

### vi) Damages

Though not raised on this motion, for completeness' sake, we note that damages in a securities fraud case are measured in terms of actual loss. *Acticon AG v. China N. E. Petroleum Holdings, Ltd.*, 692 F.3d 34, 38 (2d Cir. 2012) ("a defrauded buyer of securities is entitled to recover only the excess of what he paid over the value of what he got.")

### c. Forward Looking Statement Defense

Under the Private Securities Litigation Reform Act (PSLRA), generally, a person "shall not be liable with respect to any forward-looking statement" in a securities fraud case based on alleged material misstatement. 15 U.S.C. § 78u-5(c)(1). A statement qualifies for this safe harbor where it is "identified as a forward-looking statement, and is accompanied by meaningful cautionary statements", or if the statement is "immaterial", or if it is not established that the statement "was made with actual knowledge by that person that the statement was false or misleading." 15 U.S.C. § 78u-5(c)(1).

### d. Group Pleading Doctrine

Although plaintiff does not raise this argument, the group pleading doctrine allows plaintiffs to "circumvent the general pleading rule that fraudulent statements must be linked directly to the party accused of the fraudulent intent by relying on a presumption that statements in prospectuses, registration statements, annual reports, press releases, or group-published

information, are the collective work of those individuals with direct involvement in the everyday business of the company." *In re ShengdaTech, Inc. Sec. Litig.*, 11 Civ. 1918 (LGS), 2014 US Dist LEXIS 112190, at *26 (Hon. Lorna G. Schofield, U.S.D.J., Aug. 12, 2014 S.D.N.Y). This doctrine is "extremely limited in scope." *Id.* (finding that the doctrine did not apply to "outside directors" that were on members of a company's Compensation Committee, Nominating and Corporate Governance Committee, and Audit Committee as they were not involved in the day-to-day management of the corporation).

**III Scheme Liability Claims**

To state a claim for scheme liability under subsection (a) and (c) of Rule 10b-5, a plaintiff must show: "(1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *Plumber & Steamfitters Local 773 Pension Fund, Boston Retirement Sys. v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021) (internal quotation marks omitted). The alleged scheme must also be "in connection with the purchase or sale of a security." *Id.* (2d Cir. 2021), quoting 17 C.F.R. § 240.10b-5. Scheme liability claims sound in fraud and are subject to the heightened pleading standards of the FRCP. *Id.*

**IV Control Person Liability**

"To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Communs., Inc.*, 493 F.3d 87 at 108. A primary violation of securities law is a predicate to a claim for control person liability under § 20(a) of the Securities Exchange Act. *Pac. Inv. Mgt. Co. LLC v. Mayer Brown LLP*, 603 F.3d 144, 160 (2d Cir. 2010), citing 15 U.S.C. § 78t(a).

9

"Control over a primary violator may be established by showing that the defendant possessed the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Marshall v. Capital Growth Co. (In re Bernard L. Madoff Inv. Sec. LLC)*, 818 F.App'x 48, 55 (2d Cir. 2020) (internal quotation marks removed); see also 17 C.F.R. § 240.12b-2.

## V  Common-Law Fraud

The elements of fraud under New York law are: "(1) a misrepresentation or a material omission of fact which was false and known to be false by defendant, (2) made for the purpose of inducing the other party to rely upon it, (3) justifiable reliance of the other party on the misrepresentation or material omission, and (4) injury." *Premium Mtge. Corp. v. Equifax Info. Servs., LLC*, 583 F.3d 103, 108 (2d Cir. 2009), quoting *Lama Holding Co. v Smith Barney Inc.*, 88 NY2d 413, 421 (1996).

Under New York law, "[t]he failure to fulfill a promise to perform future acts is not ground for a fraud action unless there existed an intent not to perform at the time the promise was made." *IKB Intl. S.A. in Liquidation v Bank of Am. Corp.*, 584 F App'x 26, 29 (2d Cir. 2014), *quoting Cohen v. Koenig*, 25 F.3d 1168, 1172 (2d Cir. 1994).

A claim for common law fraud is subject to the particularity pleading requirements of Federal Rule of Civil Procedure 9(b), "which requires that the plaintiff (1) detail the statements (or omissions) that the plaintiff contends are fraudulent, (2) identify the speaker, (3) state where and when the statements (or omissions) were made, and (4) explain why the statements (or omissions) are fraudulent." *IKB Intl. S.A. in Liquidation*, 584 F.App'x 26, 27.

10

# Argument

## I   The Securities Claims are Time Barred

Miller's three causes of action based on violations of the Securities Exchange Act are time barred since Miller was aware of the underlying acts he now claims constitute fraud as of his September 11, 2023 letter (and probably sooner) and suit was not commenced until November 24, 2025. Complaint ¶63. Per the complaint, on September 11, 2023, Miller sought to have 1847 Holdings investigate the financials of the company to "uncover" whether the company's previous statements "were truthful" given the heavy losses he sustained in selling the stock that week. *Id.* Miller alleges that prior to his investigation on September 11, 2023, 1847 Holdings falsely represented to him that they would not execute reverse stock splits and dilutive offerings and then proceeded to engage in these activities. *Id.* at ¶ 19, 21, 31, 61, 62. Therefore, he "discovered the existence of the fraud" when these stock splits and offerings occurred as they contradicted the statements made to him, and the statute of limitations began accumulating at that time. *Dodds v. Cigna Sec., Inc.*, 12 F.3d at 350 (dismissing securities claims as they were time-barred).

In the September 11, 2023 letter requesting an audit, Miller sought to uncover the reasons for this "fraud," but it was his awareness of 1847 Holdings' unexpected reverse stock splits and offerings that triggered his inquiry. As such, as of September 11, 2023, Miller had sufficient knowledge of the allegedly fraudulent statements. Miller had 2 years to bring these claims "after the discovery of the facts constituting the violation" which was September 11, 2025, but this action was not filed until November 24, 2025.

Therefore, the 1st, 2nd and 3rd causes of action must be dismissed as time barred.

## II  The Facts do not Sustain a Claim for Securities Fraud

Miller's claim for securities fraud must be dismissed because the alleged facts are insufficient to support such a cause of action. 15 USCS § 78j; 17 CFR §240.10b-5(b). None of the requisite elements to sustain this cause of action are present. Further, other parties' statements do not support a theory of securities fraud by the Bevilacqua defendants, and, in any event, the statements here are forward-looking statements and insufficient to support fraud.

### a.  There is no Material Misstatement of Fact that Would Support the Securities Fraud Cause of Action

Miller primarily refers to statements made by co-defendants and only specifies two instances in which the Bevilacqua defendants actually made statements to him. (Complaint ¶ 63-66).

Other defendants' statements are an insufficient predicate to the Bevilacqua defendants' liability, since there are no facts pled from which this court could conclude that the Bevilacqua defendants had "ultimate authority" over these statements. *See generally Janus Capital Group, Inc.*, 564 U.S. 135, 131 S. Ct. 2296 (2011) (finding that a defendant did not "make" statements in a prospectus even when they were significantly involved in the preparation because it was subject to the ultimate authority of another defendant).

Certainly, the Bevilacqua defendants' role as outside attorneys for 1847 Holdings does not in itself allow for any assumption about their involvement with drafting 1847 Holdings' statements. *Pac. Inv. Mgt. Co. LLC,* 603 F.3d at 158 (2d Cir. 2010) (finding that claims against law firm were properly dismissed as their representation of a brokerage firm did not mean that the brokerage firm's statements could be attributed to the law firm.); see also *McEssy v. Gray*, 5:15-CV-1462, 2016 U.S. Dist LEXIS 197907, at *14-15 (Hon. David Hurd, U.S.D.J., Aug 11, 2016, N.D.N.Y.) ("The Second Circuit has held that a law firm that drafted various securities offerings distributed for a client could not be held liable for securities fraud where the

12

misrepresentation was not the firm's own articulated statement or explicitly adopted by the law firm") (internal quotation marks removed); *Friedman v. Arizona World Nurseries LP*, 730 F.Supp. 521, 533-534 (Hon. Kenneth Conboy, U.S.D.J. Jan 24, 1999, S.D.N.Y.) (holding that "counsel who merely draft the memorandum cannot be held liable for the general statements in the offering memorandum not specifically attributed to them" and that the court "will not assume that clients as a matter of course communicate their allegedly fraudulent schemes, in whole or in part, to their attorneys."). Therefore, these statements cannot be attributed to the Bevilacqua defendants

The Bevilacqua defendants' actual statements fall into two categories; (1) a statement made in response to Miller's request for an audit and (2) statements concerning the illegality of Miller's unauthorized recording. None of the statements made in either of these contexts support a cause of action for fraud:

To start, Miller made all of the 1847 Holdings purchases *before* the Bevilacqua Defendants made *any* statement to him. As such, it is temporally impossible for the statements to have "significantly altered the total mix of information available [to Miller]," which is the standard for materiality. *Plumber & Steamfitters Local 773 Pension Fund* 11 F.4th 90, 101 (2d Cir. 2021) (internal quotation marks removed).

Further, nothing that the Bevilacqua defendants said to Miller qualifies as "material" for purposes of his securities fraud claims because "[a] reasonable stockholder would not consider [these statements] important in deciding whether to buy or sell shares of stock." *Singh v. Cigna Corp.*, 918 F.3d 57, 63 (2d Cir. 2019) (finding that statements in Form 10-K forms and Code of Ethics Statements were not material as a reasonable shareholder would not have considered them important in deciding to purchase stock.). Specifically, it is irrelevant to the value of the stock to

state, as the Bevilacqua Defendants did, that their client, 1847 Holdings, would not conduct an audit in response to Miller's demand. Similarly, the Bevilacqua defendants' characterization of the request itself is immaterial to the stock's performance – and no reasonable investor would think otherwise (even if Miller does). Further, when the Bevilacqua defendants told Miller that he could be subject to criminal punishment for recording conversations with 1847 Holdings, that assessment bears no relation to the value of 1847 Holdings' stock.

### b. Miller Does Not Allege Sufficient Facts to Establish Scienter

Miller does not allege facts that would be sufficient to demonstrate that the Bevilacqua defendants possessed the requisite state of mind to qualify as a fraud claim.

Certainly, Miller does not describe with "particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Slayton*, 604 F.3d at 766 (2d Cir. 2010), citing 15 U.S.C. § 78u-4(b)(2); *Kalnit v. Eichler*, 264 F.3d 131, 135 (2d Cir. 2001) (affirming the dismissal of plaintiff's amended complaint for failure to allege the element of scienter with adequate particularity.).

In regard to the Bevilacqua defendants, Miller attempts to establish scienter by making the general argument that the Bevilacqua defendants "financially benefitted" from the alleged fraud. Complaint ¶ 98. He further argues that they had full knowledge of the alleged fraud by virtue of their role as counsel for 1847 Holdings and as an equity holder in 1847 Partners, the "external manager" of 1847 Holdings. *Id.*

These allegations are too general to establish scienter. Simply referring to a defendant's potential financial incentive for fraud does not give rise to a sufficient inference of scienter. *Acito v. IMCERA Group*, 47 F.3d 47 (2d Cir. 1995) (dismissing complaint because plaintiffs' allegation that defendants were motivated to defraud the public because an inflated stock price would increase their compensation is without merit since "[i]f scienter could be pleaded on that

basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions.").

Further, references to a defendant's "position as an officer alone . . . is insufficient to support an inference of scienter." *In re Citigroup, Inc. Sec. Litig.*, 330 F.Supp.2d 367, 382 (Hon. Laura Swain, U.S.D.J., Aug. 10, 2024, S.D.N.Y.) (granting motion to dismiss and finding that a defendant's role as CFO was, on its own, insufficient to establish scienter), citing *In re Health Mgmt., Inc., Sec. Litig.*, 970 F.Supp. 192, 204 (Hon. Spatt, U.S.D.J., Feb. 5, 2026, S.D.N.Y.). As such, Miller's generalized allegations regarding scienter based on the Bevilacqua defendants' status as counsel to 1847 Holdings (which does not even remotely rise to the level of being an officer) and their position as equity holders in 1847 Partners are insufficient to meet the element of scienter.

### c.  There is no Connection to the Sale of Securities

None of the Bevilacqua defendants' statements are connected to the purchase or sale of a security. The Bevilacqua defendants informed Miller that there would be no internal audit at his request and provided him with the location where he could access the already existing audits. They also told him he would not be put on the board of directors. Complaint, ex. I. Nothing about this exchange effected Miller's purchase of the stock or the value of 1847 Holdings' stock. *Lawrence v. Cohn*, 325 F.3d 141, 154 (2d Cir. 2003) (affirming dismissal of complaint as defendant's alleged misrepresentations did not "affect or 'touch' the actual purchase made by plaintiffs."); *Saxe v. E.F. Hutton & Co.*, 789 F.2d 105 (2d Cir. 1986) (affirming dismissal of 10b-5 claims as defendant's alleged misrepresentations did not pertain to value or consideration of securities sale.).

Besides the internal audit, the Bevilacqua defendants are only alleged to have communicated with Miller regarding the (il)legality of taping conversations with Roberts.

Certainly, the assessment of the legality of Miller's tactics does not concern the value of 1847 Holdings' stock. Since the substance of these statements do not relate to "the value of the securities" the complaint must be dismissed. *Id.*; *Hoffman v. TD Waterhouse Inv. Servs.*, 148 F.Supp.2d 289, 291 (Hon. Michael Mukasey, U.S.D.J., June 20, 2021, S.D.N.Y) (affirming dismissal of complaint and recognizing the "Second Circuit's requirement that the misrepresentation concern either the value of the security or the consideration received.").

Miller's timeline of events precludes him from meeting this element as "alleged misrepresentations made after [Miller's] purchase of stock . . . cannot be the basis for a claim under Section 10(b) because the statements could not have been in connection with the purchase or sale of any security." *Integrated Media Resources, LLC v. Morley*, No. 22-967, 2023 U.S. App. LEXIS 2008 at *2 (2d Cir. 2023). As Miller only spoke to the Bevilacqua Defendants after his purchase of securities, there is no connection between these statements and the purchase.

### d. Reliance is Absent

Miller has not alleged facts showing that he relied on any statements made by the Bevilacqua defendants. His reference to other allegedly duplicitous actions taken by the Bevilacqua defendants do not "show reliance upon any of [the Bevilacqua defendants'] actions except in an indirect chain that is too remote for liability." *Stoneridge Inv. Partners,* 552 U.S. at 152 (affirming dismissal of claim against defendants that allegedly allowed another party to mislead its auditor and issue a misleading financial stock price because they had no role in actually preparing or disseminating the fraudulent financial statement).

### e. Causation is also an Impossibility

Miller does not establish loss causation because he does not sufficiently "allege facts that support an inference that [the Bevilacqua defendants'] misstatements and omissions concealed the circumstances that bear upon the loss suffered such that [Miller] would have been spared all

or an ascertainable portion of that loss absent the fraud." *Lentell*, 396 F.3d at 175 (upholding dismissal of security fraud claims because plaintiff did not allege that the defendants took action that caused plaintiff's loss). Accepting Miller's allegation as true, (with the purchase and sale of the stocks already complete before with the statements of the Bevilacqua defendants on which Miller relies), it is evident that Miller would have suffered the exact same losses if he never had any contact with the Bevilacqua defendants at all. Therefore, the Bevilacqua defendants were not a cause in fact of his alleged losses.

Miller also does not allege facts indicating transaction causation in regard to the Bevilacqua defendants as he does not allege facts sufficient to support that "but for the claimed misrepresentations or omissions . . . [he] would not have entered into the detrimental securities transaction." *Lentell*, 396 F.3d at 172. Given the temporal realities here, Miller also cannot establish that he entered into the securities transaction as a result of statements that had not been made.

### f.  The Forward-Looking Statements are Safe Harbored under the PSLRA

Turning to the substance of the specifically identified statements on which Miller rests his claim (and overlooking that they are not statements by the Bevilacqua defendants but rather were made by the co-defendants), dismissal is further unavoidable because the co-defendants' statements on which Miller relies are forward-looking statements entitled to the PSLRA's safe harbor. Complaint ¶12-20.

The co-defendants' press releases and text messages about which Miller complains consist of optimistic revenue guidance in press releases and its CEO's belief that no further "dilutive offerings" would occur. Complaint ¶12-20. These statements fall within the definition of "forward looking statements" under the PSLRA since they contain "projection[s] of revenues [and] income . . . plans and objectives of management for future operations", as well as

17

statements of "future economic performance." 15 U.S.C. § 78u-5(i)(1); *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004) (affirming dismissal of complaint and finding that optimistic statements made by defendant were protected by the PSLRA safe harbor and holding that "expressions of puffery and corporate optimism do not give rise to securities violations."); *In re Barrick Gold Corp. Sec. Litig.*, 341 F.Supp.3d 358, 375 (Hon. Naomi Buchwald, U.S.D.J., Sep. 20, 2018 S.D.N.Y.) (holding that "a statement that projects results in the future is plainly forward-looking, and the Second Circuit has acknowledged the common-sense proposition that words such as 'expect' identify forward-looking statements.") (internal quotation marks removed). As such, these statements are not actionable.

## III Scheme Liability is Absent

Because the complaint fails to identify with specificity the acts that the Bevilacqua defendants took to promote the alleged scheme, his scheme liability claim must be dismissed. *Plumber & Steamfitters Local 773 Pension Fund, Boston Retirement Sys.,* 11 F.4th at 105 (dismissing scheme liability claims where plaintiff did not "articulate with precision the contours of an alleged scheme to defraud investors, or which specific acts were conducted in furtherance of it.")

Specifically absent are allegations that the Bevilacqua defendants participated in a deceptive act that is distinct, as it is required to be, from the making of any fraudulent statements. *SEC v. Rio Tinto PLC,* 41 F.4th 47, 53 (2d Cir. 2022) (affirming dismissal of scheme liability claims and holding that plaintiffs cannot repackage misstatement claims as scheme liability claims.). Nor does Miller make out the scienter element of this claim, for the same reason that this element is absent from the securities fraud cause of action. *Menaldi v. Och-Ziff Capital Mgt. Group LLC*, 164 F.Supp.3d 568, 577 (Hon. Paul Oetken U.S.D.J., Feb. 17, 2016 S.D.N.Y.)

18

(holding that "scheme liability claims are . . . subject to the PSLRA pleading standard with respect to scienter.")

Miller's only claim about the Bevilacqua defendants regarding scheme liability is that "Bevilaqua – acting as both Company counsel and equity holder - knowingly furthered and benefited from [schemes by the co-defendants]." Complaint at ¶104. These "general allegations regarding . . . the organizational role of a defendant . . . by themselves . . . are insufficient to raise a strong inference of a defendant's scienter." *In re Eletrobras Sec. Litig.*, 245 F.Supp.3d 450, 467 (Hon. John Koeltl, U.S.D.J., March 25, 2017, S.D.N.Y.), citing *In re Marsh & McLennan Cos. Sec. Litig.*, 501 F.Supp.2d 452, 483 (Hon. Shirley Kram, U.S.D.J., July 19, 2006, S.D.N.Y.)

The complaint also contains no allegation of reliance or causation. *Stoneridge Inv. Partners,* 52 U.S. at 159 (upholding dismissal of complaint and finding that respondents' conduct was "too remote to satisfy the requirement of reliance"). Miller's complaint as alleged depicts the Bevilacqua defendants of having a tertiary role that could not reasonably amount to reliance or causation.

As the complaint Miller does not meet the essential elements of scheme liability, this cause of action must also be dismissed.

## IV Control-Person Liability does not Exist

Miller alleges that the Bevilacqua Defendants exercised control over 1847 Holdings, and he alleges that 1847 Holdings committed securities fraud. Complaint ¶ 107, 110. As detailed above, Miller fails to adequately allege that any defendant, including 1847 Holdings, committed securities fraud. As such, he "cannot establish control person liability." *ATSI Communs., Inc.*, 493 F.3d at 108 (2d Cir. 2007) (dismissing control person liability claim when plaintiff failed to allege any "primary violation" by a controlled person.).

19

Miller also alleges no facts that would sustain a conclusion that the Bevilacqua defendants controlled a primary violator as the complaint does not indicate that they "had the power to direct or cause the direction of the management and policies of a person, whether through the ownership of voting securities, by contract, or otherwise." *Marshall,* 818 F.App'x at 55 (internal quotation marks removed); *Wyo. State Treas. v. Moody's Invs. Serv. (In re Lehman Bros. Mtge.-Backed Sec. Litig.)*, 650 F.3d 167 (2d Cir. 2011).

Instead, Miller alleges only that the Bevilacqua defendants were the alleged primary violators' attorneys and (without further elaboration) "equity holders." Complaint ¶98. Such allegations are insufficient to sustain even at the motion to dismiss stage, an inference of the necessary control. *Marshall*, 818 F. App'x at 55 (finding that merely being business associates does not compute control onto another party); *Wyo. State Treas.*, 650 F.3d at 187 (holding that providing strategic advice and counsel did not equate to exercising control over a person.).

Miller also fails to plead facts that would support a conclusion that the Bevilacqua defendants were culpable participants in the alleged fraud. Miller's mere reference to the Bevilacqua defendants' status as "equity holders" does not equate to their culpable participation in the alleged fraud. He does not actually allege with specificity how the Bevilacqua defendants were supposedly involved in the scheme. Complaint ¶ 106-111; *McIntire v. China Mediaexpress Holdings, Inc.*, 927 F.Supp.2d 105, 138 (Hon. Victor Marrero, U.S.D.J., Feb. 28, 2013, S.D.N.Y.) (dismissing control person liability claims where plaintiffs only pled general and conclusory allegation of culpable participation in controlled person's fraud); *In re Global Crossing, Ltd. Sec. Litig.*, 2005 U.S.Dist.LEXIS 26942 at *31 (Hon. Gerard Lynch, U.S.D.J Nov. 4, 2005, S.D.N.Y) (finding that the element of culpable participation had not been met where

plaintiff only alleged that defendant had stock ownership and board positions in the allegedly controlled entity).

As such, the complaint cannot sustain liability on a control-person theory and must be dismissed.

**V   Common-Law Fraud is Unsustainable**

Miller's claim of action for common-law fraud must be dismissed as it is not pled with the requisite specificity. General and conclusory claims that all defendants  collectively participated in fraud are insufficient to meet the heightened pleading standard for fraud. *IKB Intl. S.A. in Liquidation.*, 584 F.App'x 26 at 28 (dismissing common law fraud claims for lacking requisite specificity). Yet, these are the only fraud claims even conceivably applicable to the Bevilacqua defendants. Complaint ¶ 112-118.

Further, Miller's alleged reliance on promissory statements is not actionable. *IKB Intl. S.A. in Liquidation.*, 584 F.App'x 26 at 29 (dismissing fraud claims when plaintiff relied on a Prospectus that described a transfer of mortgages as a prospective event.).

Further, as a matter of practicality, Miller cannot reasonably allege that he relied on statements made after his purchase of securities because he did not know about these statements when purchasing the securities. *In re Fyre Festival Litig.*, 399 F.Supp.3d 203, 217 (Hon. Castel, U.S.D.J., July 10, 2019, S.D.N.Y.) (The court could not infer that plaintiffs' actions were done in reliance of defendant's tweet because they did not allege that they knew about the tweet.).

As such, he fails to allege facts stating a cause of action for fraud.

## Conclusion

It is respectfully submitted that for all the foregoing reasons, the Bevilacqua defendants' motion should be granted in its entirety, the Complaint should be dismissed, and the Court should award such other and further relief as it deems just and proper.

21

Dated: February 17, 2026

Yours, etc.

WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By:        _____/s/_____

                Joseph L. Francoeur
                Evgenia Soldatos-Mouzouris
                *Attorneys for Defendants*
                *Louis A. Bevilacqua and*
                *Bevilacqua PLLC*
                150 East 42nd Street
                New York, New York 10017
                (212) 490-3000

22

## **<u>Certification</u>**

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing memorandum of law in support complies with the word-count limitations and contains 6306 words, exclusive of the caption, table of contents, table of authorities, signature block, and this certificate.

Dated: February 17, 2026

/s/
_____

Joseph Francoeur

23

329838030v.1