UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – X
                               :

MATTHEW MILLER, Individually and       :       25-cv-08606 (LAK)
as Principal of STRATEGIC RISK LLC,    :
                               :

                Plaintiff,      :

                               :

   -against-                      :

                               :

1847 HOLDINGS LLC, 1847 PARTNERS LLC,   :
ELLERY W. ROBERTS, LOUIS A. BEVILACQUA,  :
BEVILACQUA PLLC, and VERNICE HOWARD,   :
                               :

               Defendants.    :

                               :
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – – – X

## <u>MEMORANDUM OF LAW IN SUPPORT OF THE 1847 DEFENDANTS' MOTION TO DISMISS THE SECOND AMENDED COMPLAINT</u>

**KANE KESSLER, P.C.**

By: *<u>/s/ Arthur M. Rosenberg</u>*
      Arthur M. Rosenberg
600 Third Avenue-35th Floor
New York, New York  10016
(212) 519-6222
<u>arosenberg@kanekessler.com</u>

*Attorneys for Defendants 1847 Holdings LLC,*
*1847 Partners LLC, Ellery W. Roberts, and*
*Vernice Howard*

# TABLE OF CONTENTS

PRELIMINARY STATEMENT ......................................................................................... 1

SUMMARY OF FACTS ALLEGED ................................................................................ 2

A.    The Parties ................................................................................................... 2

B.    1847 Holdings' May 15, 2023 Press Release ............................................. 3

C.    Plaintiff Contacts Roberts, the CEO of 1847 Holdings,
in May/June/July 2023 ............................................................................... 4

D.    The July 14, 2023 Capital Raise and Plaintiff's Response Thereto ............ 5

E.    August 2023 Lender Defaults ..................................................................... 5

F.    August 28, 2023 Telephone Conversation Between Plaintiff
and Roberts ................................................................................................. 6

G.    September 1, 2023: "Reverse Split Announcement Contradicted Roberts's
August 28 Assurances" ............................................................................... 6

H.    September 10, 2023: Plaintiff Demands an Investigation into
"SECURITIES VIOLATIONS/FRAUD" .................................................. 7

I.    Week of September 11, 2023: Plaintiff Liquidates His
Position at a Loss ........................................................................................ 8

PROCEDURAL HISTORY .............................................................................................. 8

ARGUMENT .................................................................................................................. 10

A.    Standard Governing Motions to Dismiss Pursuant to
Fed. R. Civ. P. 12(b)(6) ........................................................................... 10

B.    The SAC Must Be Dismissed in Its Entirety Because All of Plaintiff's
Claims Are Time-Barred .......................................................................... 11

    1.    All of Plaintiffs' Claims Are Subject to Two-Year Statutes of Limitations ........ 11

    2.    Dismissal on Statute of Limitations Grounds Is Appropriate and
Common Where, as Here, the Pertinent Facts Are Apparent on the
Face of the Complaint and Demonstrate that Plaintiff's Claims Are
Time-Barred ................................................................................... 12

    3.    Plaintiff's Claims Are All Time-Barred Because They Accrued More
than Two Years Before Plaintiff Initiated this Lawsuit ...................... 13

C.    Even if Any of Plaintiff's Claims Had Been Timely Filed, the SAC Fails to
State Any Viable Claims Against Vernice Howard or 1847 Partners .......................... 16

    1.    The SAC's Scant, Conclusory Allegations About Howard and 1847
Partners ......................................................................................... 16

    2.    Plaintiff Fails to State a Cause of Action Against Howard or 1847
Partners Under Section 10(b) and Rule 10b-5 .................................... 17

        a.    Elements of a Cause of Action Under Section 10(b) and Rule
10b-5 ................................................................................... 17

    b. Plaintiff Fails to Plead Any Material Misrepresentations by Howard or 1847 Partners ........................................................................ 18

    c. Plaintiff's Scienter Allegations About Howard and 1847 Partners Are Completely Inadequate ......................................................... 19

    d. Plaintiff Does Not Allege that He Acted in Reliance on Any Misrepresentations by Howard or 1847 Partners ........................... 21

  3. Plaintiff Fails to State a Cause of Action Against Howard or 1847 Partners for Scheme Liability Under Section 10(b) and Rule 10b-5(a) & (c) .............................................................................. 21

  4. Plaintiff Fails to State a Cause of Action Against Howard or 1847 Partners for Control Person Liability Under Section 20(a) .................... 22

  5. Plaintiff Fails to State a Cause of Action Against Howard or 1847 Partners for Common Law Fraud .................................................... 23

CONCLUSION .................................................................................................. 24

**Page(s)**

## Cases

*Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*,
   568 U.S. 455 (2013) ........................................................................ 17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ........................................................................ 10

*ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*.,
   493 F.3d 87 (2d Cir. 2007) ........................................................ 10, 22

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) .................................................................... 10, 20

*Bin Li v. Eqonex Ltd*.,
   2024 WL 4241951 (S.D.N.Y. Sept. 18, 2024) .................................. 22

*Blank v. TriPoint Glob. Equities, LLC*,
   338 F. Supp. 3d 194 (S.D.N.Y. 2018) ............................................. 19

*Burch v. Pioneer Credit Recovery, Inc.*,
   551 F.3d 122 (2d Cir. 2008) ............................................................ 20

*Chalfin v. Go Big Solar, LLC*,
   2025 WL 2022012 (S.D.N.Y. July 17, 2025), *appeal filed* (2d Cir. Aug. 14, 2025) ................. 2

*Chambers v. Time Warner, Inc*.,
   282 F.3d 147 (2d Cir. 2002) ............................................................ 10

*Charles Schwab Corp. v. Bank of America Corp*.,
   883 F.3d 68 (2d Cir. 2018) .............................................................. 11

*City of Hialeah Employees' Ret. Sys. v. Peloton Interactive, Inc*.,
   153 F.4th 288 (2d Cir. 2025) ........................................................... 17

*City of Pontiac Policemen's & Firemen's Ret. Sys. v. UBS AG*,
   752 F.3d 173 (2d Cir. 2014) ............................................................ 19

*Cohen v. Stevanovich*,
   722 F. Supp. 2d 416 (S.D.N.Y. 2010) ............................................. 23

*Dura Pharms, Inc. v. Broudo*,
   544 U.S. 336 (2005) ........................................................................ 17

*Ernst & Ernst v. Hochfelder*,
    425 U.S. 185 (1976) ........................................................................................ 20

*GE Invs. v. Gen. Elec. Co.*,
    447 F. App'x 229 (2d Cir. 2011)...................................................................... 18

*Fairway Grp. Holdings Corp. Sec. Litig.*,
    2015 WL 249508 (S.D.N.Y. Jan. 20, 2015) .................................................... 23

*Halliburton Co. v. Erica P. John Fund, Inc.*,
    573 U.S. 258 (2014) ........................................................................................ 21

*I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC*,
    280 F. Supp. 3d 524 (S.D.N.Y. 2017) ............................................................ 23

*In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*,
    529 F. Supp. 3d 111 (S.D.N.Y. 2021) ............................................................ 20

*In re Alstom SA*,
    406 F. Supp. 2d 433 (S.D.N.Y. 2005) ...................................................... 19, 21

*In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*,
    995 F. Supp. 2d 291 (S.D.N.Y. 2014), *aff'd sub nom. SRM Global Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173 (2d Cir. 2016) ................................................. 12

*In re Bibox Grp. Holdings Ltd. Sec. Litig.*,
    534 F. Supp. 3d 326 (S.D.N.Y. 2021) ............................................................ 12

*In re MBIA Inc.*,
    No. 05 CIV. 03514 (LLS), 2007 WL 473708 (S.D.N.Y. Feb. 14, 2007)................................. 12

*In re Merrill Lynch & Co., Inc.*,
    273 F. Supp. 2d 351 (S.D.N.Y. 2003), *aff'd sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005) ........................................................ 12

*In re Parmalat Sec. Litig.*,
    383 F. Supp. 2d 616 (S.D.N.Y. 2005) ............................................................ 22

*KDH Consulting Grp. LLC v. Iterative Cap. Mgmt. L.P.*,
    528 F. Supp. 3d 192 (S.D.N.Y. 2021) ............................................................ 11

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) ...................................................................... 12,17

*Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*,
    797 F.3d 160 (2d Cir. 2015) ............................................................................ 23

*Lozada v. TaskUs, Inc.*,
710 F. Supp. 3d 283 (S.D.N.Y. 2024) ........................................................ 20

*Macquarie Infrastructure Corp. v. Moab Partners, L.P.*,
601 U.S. 257 (2024) ................................................................................... 19

*Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*,
164 F. Supp. 3d 568 (S.D.N.Y. 2016) ........................................................ 21

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*,
547 U.S. 71 (2006) ..................................................................................... 17

*Rombach v. Chang*,
355 F.3d 164 (2d Cir. 2004) ...................................................................... 11

*Staehr v. Hartford Fin. Servs. Grp., Inc.*,
547 F.3d 406 (2d Cir. 2008) ...................................................................... 12

*Tapia-Matos v. Caesarstone Sdot-Yam, Ltd.*,
No. 15-CV-6726 (JMF), 2016 WL 3951184 (S.D.N.Y. July 20, 2016) ................. 18

*Tarsavage v. Citic Trust Co.*,
3 F. Supp. 3d 137 (S.D.N.Y. 2014) ............................................................ 22

*Tellabs, Inc. v. Makor Issues & Rts., Ltd.*,
551 U.S. 308 (2007) ................................................................................... 20

*VR Glob. Partners, L.P. v. Petroleos de Venezuela*,
No. 23 CV 5604, 2024 WL 1514982 (S.D.N.Y. Apr. 8, 2024) ................. 11

*W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*,
845 F.3d 384 (8th Cir. 2016) ..................................................................... 11

*Wright v. Ernst & Young LLP*,
152 F.3d 169 (2d Cir. 1998) ...................................................................... 18

*Youngers v. Virtus Inv. Partners Inc.*,
195 F. Supp. 3d 499 (S.D.N.Y. 2016) ........................................................ 22

## Statutes

15 U.S.C. § 78u-4(b)(1) .................................................................................. 10

15 U.S.C. § 78u-4(b)(2) .................................................................................. 11

18 U.S.C. § 1962(c) ....................................................................................... 8, 9

18 U.S.C. § 1962(d) ...................................................................................... 8, 9

28 U.S.C. § 1658(b) ........................................................................ 11

**Rules**

Fed. R. Civ. P. 9(b) ..................................................................... 2,10

Fed. R. Civ. P. 10(b) ....................................................................... 9

Fed. R. Civ. P. 12(b)(6) ................................................................ 10

N.Y. C.P.L.R. § 213(8) (McKinney 2013) ................................... 12

**Regulations**

17 C.F.R. § 240.10b–5 .................................................................. 19

17 C.F.R. § 240.12b-2 .................................................................. 22

Defendants 1847 Holdings LLC ("1847 Holdings" or "the Company"), 1847 Partners LLC ("1847 Partners"), Ellery W. Roberts ("Roberts"), and Vernice Howard ("Howard" and, collectively with 1847 Holdings, 1847 Partners, and Roberts, the "1847 Defendants") hereby submit this Memorandum of Law in support of their Motion to Dismiss the Second Amended Complaint filed November 24, 2025 (the "SAC") by Plaintiff Matthew Miller, individually and as principal of Strategic Risk LLC, pursuant to Federal Rule of Civil Procedure 12(b)(6).

## PRELIMINARY STATEMENT

The SAC purports to set forth four causes of action: (1) securities fraud in violation of Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder, (2) scheme liability in violation of Section 10(b) and Rule 10b-5(a) & (c), (3) control person liability under Section 20(a) of the Securities Exchange Act of 1934, and (4) common law fraud.

All of Plaintiff's claims are subject to two-year statutes of limitation. Since Plaintiff first attempted to file this case on October 17, 2025 (and was first successful in filing the original Complaint on October 21, 2025), all of his claims are time-barred if they accrued before October 17, 2023. It is crystal clear, on the face of the SAC, that Plaintiff's claims accrued no later than mid-September 2023. Plaintiff alleges that he purchased shares in reliance on Defendants' misrepresentations and omissions in June/July 2023; that he learned of the falsity of Defendants' representations between July 15, 2023 and September 1, 2023; that he had been damaged by his reliance on Defendants' misrepresentations by August 2023; that he was "immediately and severely harmed" by September 2023; and that he sold all of his stock at a loss the week of September 11, 2023. Plaintiff also attaches as an Exhibit to the SAC portions of a September 10, 2023 letter that he sent to a member of 1847 Holdings' Board of Directors, requesting an

investigation into "securities violations" and "fraud." Since Plaintiff knew all of the pertinent facts underlying his claims no later than mid-September 2023 – more than two years before he filed suit – all of his claims are time-barred.

Even if Plaintiffs' claims were not time-barred, his claims against Vernice Howard and 1847 Partners still would have to be dismissed. The SAC contains almost no allegations against Howard or 1847 Partners, other than legal conclusions unsupported by any facts. Plaintiff does not plead any misrepresentations by Howard or 1847 Partners (much less that he was aware of or acted in reliance on any such misrepresentations), and his boilerplate allegations of "scienter" and "control" fall far short of meeting the stringent pleading requirements of Fed. R. Civ. P. 9(b) and the Private Securities Litigation Reform Act.

The Court should dismiss all of Plaintiff's claims against the 1847 Defendants with prejudice and without leave to amend.

## SUMMARY OF FACTS ALLEGED[1]

### A.    The Parties

Plaintiff Matthew Miller ("Miller") invested over $980,000 in Defendant 1847 Holdings and became its largest shareholder following his participation in a July 2023 private placement. SAC ¶ 4. Plaintiff Strategic Risk LLC is owned and managed by Miller, and was the investing entity through which Miller acquired interests in 1847 Holdings. *Id.* ¶ 5.

1847 Holdings is a publicly traded holding company that owns and operates multiple subsidiaries. *Id.* ¶ 6. Defendant 1847 Partners serves as the external manager of 1847 Holdings

---

[1] This summary is based on the allegations of the SAC, the exhibits thereto, and documents incorporated in or integral to the SAC (ECF 36, Rosenberg Aff. Exh. A). *See Chalfin v. Go Big Solar, LLC*, No. 24 CIV. 4768 (KPF), 2025 WL 2022012, at *14 (S.D.N.Y. July 17, 2025) (on a motion to dismiss, the Court may consider exhibits to the complaint, any statements or documents incorporated by reference in the complaint, documents that are integral to the complaint, and matters of which judicial notice may be taken), *appeal filed* (2d Cir. Aug. 14, 2025).

pursuant to a Management Services Agreement. *Id.* ¶ 7. Defendant Roberts is the founder and Chief Executive Officer of 1847 Holdings and the sole manager of 1847 Partners. *Id.* ¶ 8. Defendant Howard has served as Chief Financial Officer of 1847 Holdings since approximately September 2021. *Id.* ¶ 11.[2]

**B.**      **1847 Holdings' May 15, 2023 Press Release**

Plaintiff alleges that a "true and correct copy" of a May 15, 2023 press release issued by 1847 Holdings is attached to the SAC as Exhibit A. *See* SAC ¶ 12. To the contrary, Exhibit A to the SAC is a selective, incomplete, cut-and-paste of excerpts from the May 15, 2023 press release. A complete, true and correct copy of the May 15, 2023 press release is attached as Exhibit B to the accompanying Affirmation of Arthur M. Rosenberg ("Rosenberg Aff.").

In particular, Plaintiff's cut-and-paste version omits the following language in the press release:

> **Forward-Looking Statements**
>
> This press release may contain information about 1847 Holdings' view of its future expectations, plans and prospects that constitute forward-looking statements. All forward-looking statements are based on our management's beliefs, assumptions and expectations of our future economic performance, taking into account the information currently available to it. These statements are not statements of historical fact. Forward-looking statements are subject to a number of factors, risks and uncertainties, some of which are not currently known to us, that may cause our actual results, performance or financial condition to be materially different from the expectations of future results, performance or financial position. Our actual results may differ materially from the results discussed in forward-looking statements. Factors that might cause such a difference include but are not limited to the risks set forth in "Risk Factors" included in our SEC filings.

Rosenberg Aff., Exh. B (emphasis in original).

---

[2] The other two defendants, Louis A. Bevilacqua and Bevilacqua PLLC, are represented by separate counsel.

In the press release, 1847 Holdings stated that it was "reaffirming our prior guidance of revenue in excess of $90 million in 2023." *See* SAC ¶ 12. Plaintiff alleges that "[t]he release highlighted profitability, emphasized subsidiary strength, and represented that the Company was financially positioned for continued growth." *Id.* In a September 3, 2023 post on x.com, 1847 Holdings stated that it "expects to achieve $90M in sales in 2023 excluding planned consumer product company acquisition; cash flow rapidly improving." *Id. See* SAC*,* Exhibit C.[3] Internal financial data later confirmed that the Company's actual 2023 revenue was approximately $68 million. *Id.* ¶ 27.

## C.   Plaintiff Contacts Roberts, the CEO of 1847 Holdings, in May/June/July 2023

Between May and June 2023, Plaintiff and CEO Ellery Roberts had two to three phone calls during which they discussed the Company's revenue trajectory, cash flow, liquidity needs, and subsidiary performance. *Id.* ¶ 15. Roberts failed to disclose that the Company faced liquidity constraints that contradicted the optimistic public guidance. *Id.* ¶ 16. Based on the May 15 press release and Roberts' verbal assurances during these calls, Plaintiff believed the Company had credible financial projections and sufficient operational strength to support its public claims. *Id.* ¶ 17.

In June 2023, Plaintiff purchased approximately 500,000 shares of 1847 Holdings. *Id.* ¶ 18. Shortly thereafter, Plaintiff asked Roberts whether 1847 Holdings would need to engage in additional offerings. *Id.* ¶ 19. Roberts told Plaintiff that no further offerings were planned. *Id.* Plaintiff then invested approximately $365,000 in the next offering. *Id.*

---

[3] Plaintiff misrepresents the contents of Exhibit C to the SAC, just as he misrepresents the contents of Exhibit A. Plaintiff alleges that "Throughout 2023—including as late as September 2023—1847 Holdings publicly reaffirmed revenue guidance 'in excess of $90 million.' Roberts personally signed or authorized these statements in filings, press releases, and investor communications. See a true and correct copy of these statements, attached as **Exhibit C**." SAC ¶ 26 (emphasis in original). Contrary to Plaintiff's allegations, Exhibit C does not include any "filings, press releases, [or] investor communications" – instead, it contains only a one-sentence social media post (not signed by Roberts).

On July 1, 2023, Plaintiff sent a text message to Roberts stating "[j]ust wanted to let you know I was buying more." *Id.* *See* SAC*,* Exhibit B. Plaintiff asked for "some assurance that this latest offering will be able to provide enough cash to last you without having to raise anything more for at least a year." *Id.* Roberts responded "[o]ur forecast does not show us raising equity for operating purposes. As stated publicly, we see ourselves building cash from here on out." *Id.*

**D. <u>The July 14, 2023 Capital Raise and Plaintiff's Response Thereto</u>**

On July 14, 2023 – less than two weeks after the July 1, 2023 text message exchange – 1847 Holdings proceeded with a capital raise. *Id.* ¶ 37. On July 15, 2023, immediately after the capital raise, Plaintiff confronted Roberts via text message, stating in relevant part:

> I took your word for it when I initially invested that you could build on cash and didn't have an equity raise in the forecast. I had friends and family members that bought in too believing they were safe from this – so I look like a complete ass.

SAC ¶ 44 and Exhibit E.

**E. <u>August 2023 Lender Defaults</u>**

On August 4, 2023 and August 9, 2023 – just weeks after the July 14, 2023 capital raise – two separate lenders declared 1847 Holdings in default. *Id.* ¶ 45 and *See* SAC*,* Exhibits F and G. 1847 Holdings elected (or perhaps was forced) to satisfy the defaults by issuing large amounts of equity at steep discounts, depressing the stock price. *Id.* ¶ 46.

In Plaintiffs' words:

> These August defaults put the lie to Roberts's repeated claims to Plaintiff in June and July 2023 that the Company was "building cash," did not foresee raising equity for operating purposes, and had no further offerings planned for "at least a year." The receipt of two default notices within five days demonstrated that the Company's cash position was far more precarious than disclosed.

*    *    *    *

> These defaults revealed that Roberts's prior statements were materially false when made. A company that reaffirms guidance of $90 million in revenue and asserts that it is "building cash" does not experience back-to-back lender defaults within days. The defaults were a direct consequence of the Company's liquidity crisis—one that Roberts concealed from Plaintiff at the exact time he was soliciting Plaintiff's investment and encouraging him to hold a 10%+ position.

*Id.* ¶¶ 47, 50.

**F.    August 28, 2023 Telephone Conversation Between Plaintiff and Roberts**

On August 28, 2023, Plaintiff convened and recorded a phone call with Roberts. *Id.* ¶ 51. By this point, Plaintiff's position had already been severely damaged by the July 14 offering and the August 4 and August 9 default-triggered equity issuances. *Id.* During this call, Plaintiff asked Roberts whether the Company was planning a reverse stock split. *Id.* ¶ 52. Roberts denied that any reverse split was planned. *Id.* ¶ 54.

**G.    September 1, 2023: "Reverse Split Announcement Contradicted Roberts's August 28 Assurances"**

On September 1, 2023 -- just three days after Roberts assured Plaintiff that the Company was not planning any reverse split -- 1847 Holdings publicly announced that it would implement a 1-for-25 reverse stock split.

Again, in Plaintiff's words:

> The September 1 announcement makes plain that the reverse split had already been approved internally and scheduled at the time Roberts spoke to Plaintiff. The press release stated that the reverse split would become effective on September 11, 2023, meaning the corporate process to approve the maneuver was well underway before the announcement date. Roberts's statement on August 28 denying knowledge of such a plan was therefore materially false when made.

6

The 1-for-25 reverse split immediately and severely harmed Plaintiff's investment. Because 1847 Holdings simultaneously continued issuing shares through financings and default-related conversions, the reverse split failed to stabilize the stock price. Instead, it enabled further dilution, resulting in further catastrophic losses for Plaintiff.

*Id.* ¶¶ 58-59.

## H.    September 10, 2023:  Plaintiff Demands an Investigation into "SECURITIES VIOLATIONS/FRAUD"

On September 10, 2023, Plaintiff wrote to a member of the Board of Directors of 1847 Holdings, stating in relevant part:

> REQUEST FOR AN INDEPENDENT INVESTIGATIVE COMMITTEE TO BE FORMED TO INVESTIGATE THE CONDUCT OF 1847 HOLDINGS LLC CEO/CHAIRMAN ("CEO") FOR SECURITIES VIOLATIONS/FRAUD . . . .
>
> *            *            *            *
>
> I(we) are reaching out to yourself . . . prior to the possibility of 'shareholders' engaging outside council [sic] to formally represent the 'shareholder' claims/concerns.
>
> I, in my capacity as I suspect the largest 'shareholder' of the LLC, have grave concerns about the conduct of the CEO.  Myself, and other shareholders, believe these concerns involve securities fraud / violations which, in our opinion, warrants a formal and fulsome independent investigation and of which we believe the Board of Directors should take seriously and initiate and follow appropriate procedures to represent the shareholders' best interest posthaste.

SAC Exhibit D (emphasis in original).[4]

Plaintiff made this request "after repeatedly questioning the reliability of the Company's projections" (*id.* ¶ 29), and "because the Company's reaffirmed revenue guidance, liquidity

---

[4] Plaintiff alleges that Exhibit D to the SAC consists of "retractions" by Defendants.  SAC ¶ 29.  To the contrary, Exhibit D does not contain any retractions (or any other statements by Defendants).  Instead, Exhibit D consists of only the first page of a September 10, 2023 communication from Plaintiff to a member of 1847 Holdings' Board of Directors.

representations, and disclosures were inconsistent with the financial distress that had suddenly materialized in July and August 2023." *Id.* ¶ 63.

**I.** <u>**Week of September 11, 2023: Plaintiff Liquidates His Position at a Loss**</u>

During the week of September 11, 2023, Plaintiff sold all of his shares in 1847 Holdings at a loss. *Id.* ¶ 62.

<u>**PROCEDURAL HISTORY**</u>

Plaintiff attempted to file the original Complaint in this case on October 17, 2025 (ECF 1). However, the filing was deficient, and the Court ordered Plaintiff to re-file.[5]  Plaintiff re-filed the original Complaint on October 21, 2025 (ECF 23).  The original Complaint was 85 pages long, and contained 314 numbered paragraphs (plus a 10-page "Preliminary Statement" without paragraph numbering).  The caption listed 10 named defendants[6] (plus "John Does 1-10"), but Paragraphs 10 and 11 of the Complaint referred to two additional entities (Spartan Capital Securities, LLC and Sichenzia Ross Ference Carmel LLP) as defendants.  The Complaint had five Counts:  Violation of 18 U.S.C. § 1962(c) (Conducting a Racketeering Enterprise) (Count One), Conspiracy To Violate 18 U.S.C. § 1962(d) (Conspiracy to Conduct a Racketeering Enterprise) (Count Two), Common Law Fraud (Count Three), Fraudulent Conveyance (Count Four), and Aiding and Abetting Fraud (Count Five).  The original Complaint did not contain any federal securities law claims.

On October 24, 2025 – three days after filing the original Complaint – Plaintiff filed a First Amended Complaint ("FAC") (ECF 34).  The FAC was substantially identical to the original Complaint – 85 pages long, with 314 numbered paragraphs and a 10-page "Preliminary

---

[5] *See* Notice dated October 20, 2025.,
[6] 1847 Holdings LLC, 1847 Partners LLC, Ellery W. Roberts; Joseph A. Bevilacqua, Bevilacqua PLLC, Joseph D. Wilson, Eric Van Dam, Vernice Howard, Edward Tobin; and Glyn Milburn.

Statement," and alleging the same five Counts – but added Spartan Capital Securities, LLC and Sichenzia Ross Ference Carmel LLP as defendants in the caption.

On October 28, 2025, the Court entered an Order dismissing the FAC without prejudice, stating:

> The first amended complaint in this civil RICO case covers 85 pages (exclusive of exhibits) and contains 314 numbered paragraphs. It is discursive and contains legal argument and case citations that in ordinary circumstances have no proper place in a complaint. It is not the "short and plain statement of the claim showing that the pleader is entitled to relief" that Rule 8(a) requires.

> Accordingly, the first amended complaint is dismissed without prejudice to Plaintiff filing an amended complaint, no more than 40 pages long, on or before November 24, 2025. The Court regards 40 pages as ample given its review of the present pleading.

ECF 35.

Plaintiff filed the SAC (ECF 36) on November 24, 2025. The SAC omits four of the five counts in the FAC (Violation of 18 U.S.C. § 1962(c) (Conducting a Racketeering Enterprise)), Conspiracy To Violate 18 U.S.C. § 1962(d) (Conspiracy to Conduct a Racketeering Enterprise), Fraudulent Conveyance, and Aiding and Abetting Fraud), and drops half of the defendants from the FAC.[7] For the first time, Plaintiff asserted claims based on the federal securities laws: Securities Fraud Violations of Section 10(b) and Rule 10b-5 (Count One), Scheme Liability Violations of Section 10(b) and Rule 10b-5(a) & (c) (Count Two), and Control-Person Liability under Section 20(a) of the Securities Exchange Act of 1934 (Count Three). The only count remaining from the FAC is a count for common law fraud (Count Four).[8]

---

[7] Joseph D. Wilson, Eric Van Dam, Edward Tobin, Glyn Milburn, Spartan Capital Securities, LLC, and Sichenzia Ross Ference Carmel LLP.

[8] The SAC, like the original Complaint and the FAC, contains a multi-page "Preliminary Statement" that is not in numbered paragraphs. This violates Fed. R. Civ. P. 10(b) ("A party must state its claims or defenses in numbered paragraphs, each limited as far as practicable to a single set of circumstances.").

## ARGUMENT

### A.    Standard Governing Motions to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6)

Fed. R. Civ. P. 12(b)(6) provides for dismissal of a complaint for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). To meet this standard, a plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A complaint should be dismissed if the plaintiff has not offered factual allegations sufficient to render the claims facially plausible. *See id.*

Although the Court must draw reasonable inferences in favor of the non-moving party (*Chambers v. Time Warner, Inc*., 282 F.3d 147, 152 (2d Cir. 2002)), the requirement that a court accept the factual allegations in the complaint as true does not extend to legal conclusions. *See Iqbal*, 556 U.S. at 678.

A plaintiff claiming fraud -- including securities fraud -- must satisfy the heightened pleading requirements of Fed. R. Civ. P. 9(b) by "stat[ing] with particularity the circumstances constituting fraud." "Allegations that are conclusory or unsupported by factual assertions are insufficient." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd*., 493 F.3d 87, 99 (2d Cir. 2007).

The Private Securities Litigation Reform Act ("PSLRA") also imposes heightened pleading standards on plaintiffs alleging securities fraud. When a plaintiff alleges that defendants made misleading statements or omissions, "the complaint shall specify each statement alleged to have been misleading, the reason or reasons why the statement is misleading, and, if an allegation regarding the statement or omission is made on information and belief, the complaint shall state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1). Plaintiffs

"must do more than say that the statements ... were false and misleading; they must demonstrate with specificity why and how that is so." *Rombach v. Chang*, 355 F.3d 164, 174 (2d Cir. 2004). To adequately plead scienter, "the complaint shall ... state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2). The court should grant a motion to dismiss a securities fraud complaint if these requirements are not met. *KDH Consulting Grp. LLC v. Iterative Cap. Mgmt. L.P.*, 528 F. Supp. 3d 192, 201 (S.D.N.Y. 2021).

**B.** **The SAC Must Be Dismissed in Its Entirety Because All of Plaintiff's Claims Are Time-Barred**

**1.** **All of Plaintiffs' Claims Are Subject to Two-Year Statutes of Limitations**

Plaintiff asserts four causes of action: (1) securities fraud (violations of Section 10(b)(5) and Rule 10b-5) (Count One), (2) scheme liability (violations of Section 10(b) and Rule 10b-5(a) & (c)) (Count Two), (3) control person liability under Section 20(a) of the Securities Exchange Act of 1934 (Count Three), and (4) common law fraud (Count Four).

Each of Plaintiff's claims is subject to a two-year statute of limitations:

- Section 10(b) and Rule 10b-5: "[A] private right of action that involves a claim of fraud ... in contravention of ... the securities laws may be brought not later than the earlier of (1) 2 years after the discovery of facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C. § 1658(b). *See also Charles Schwab Corp. v. Bank of America Corp.*, 883 F.3d 68, 94 (2d Cir. 2018) (Exchange Act claims "sounding in fraud must be filed within the earlier of five years from the alleged violation or two years after discovery of the facts constituting the violation."); *VR Glob. Partners, L.P. v. Petroleos de Venezuela*, No. 23 CV 5604, 2024 WL 1514982, at *4 (S.D.N.Y. Apr. 8, 2024) ("Claims brought under § 10(b) of the Exchange Act are subject to a two-year statute of limitations and a five-year statute of repose, whichever is shorter.").

- Scheme liability under Section 10(b) and Rule 10b-5(a) & (c) is subject to the same statute of limitations as Section 10(b) and Rule 10b-5. 28 U.S.C. § 1658(b). *See also W. Virginia Pipe Trades Health & Welfare Fund v. Medtronic, Inc.*, 845 F.3d 384, 389 (8th Cir. 2016) (applying statute of limitations set forth in 28 U.S.C. § 1658(b) to claim of scheme liability).

- Control person liability under Section 20(a): *In re Bibox Grp. Holdings Ltd. Sec. Litig.*, 534 F. Supp. 3d 326, 338 n.4 (S.D.N.Y. 2021) ("The same statutes of limitations that apply to primary claims under the 1933 and 1934 Acts also apply to control person claims."); *In re MBIA Inc*., No. 05 CIV. 03514 (LLS), 2007 WL 473708, at *9 (S.D.N.Y. Feb. 14, 2007) ("Plaintiffs' claims for control person liability under Section 20(a) of the Exchange Act are subject to the same statute of limitations as Section 10(b) claims because section 20(a) merely creates a derivative liability for the violations of other sections of the [Exchange] Act. Because the direct claims under Section 10(b) and Rule 10b-5 are time barred, the Section 20(a) claims must also be dismissed.") (internal citations, quotations, and footnote omitted).

- Common law fraud: *In re Bear Stearns Companies, Inc. Sec., Derivative, & ERISA Litig.*, 995 F. Supp. 2d 291, 309–10 (S.D.N.Y. 2014) ("Under New York law, the statute of limitations for common law fraud is six years from accrual or two years from actual or imputed discovery." (citing N.Y. C.P.L.R. § 213(8) (McKinney 2013)), *aff'd sub nom. SRM Glob. Master Fund Ltd. P'ship v. Bear Stearns Companies L.L.C.*, 829 F.3d 173 (2d Cir. 2016).

## 2. Dismissal on Statute of Limitations Grounds Is Appropriate and Common Where, as Here, the Pertinent Facts Are Apparent on the Face of the Complaint and Demonstrate that Plaintiff's Claims Are Time-Barred

"[C]ourts can 'readily resolve the issue' of inquiry notice as a matter of law on a motion to dismiss—as has been done in 'a vast number of cases' in this circuit—where 'the facts needed for determination of when a reasonable investor of ordinary intelligence would have been aware of the existence of fraud can be gleaned from the complaint and papers ... integral to the complaint.'" *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 412 (2d Cir. 2008) (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005)). "Courts in this district routinely dismiss securities fraud claims on statute of limitations grounds at the pleading stage where, as here, the facts necessary to trigger inquiry notice are apparent from the face of the complaint, the documents cited therein and other public documents." *In re Merrill Lynch & Co., Inc.*, 273 F. Supp. 2d 351, 378–79 (S.D.N.Y. 2003) (collecting cases), *aff'd sub nom. Lentell v. Merrill Lynch & Co.*, 396 F.3d 161 (2d Cir. 2005).

**3.** **Plaintiff's Claims Are All Time-Barred Because They Accrued More than Two Years Before Plaintiff Initiated this Lawsuit**

Plaintiff first attempted to file the original Complaint in this case on October 17, 2025, and actually filed it on October 21, 2025. Even if the claims in the SAC relate back to that filing, all of Plaintiff's claims are time-barred if they accrued before October 17, 2023. It is readily apparent on the face of the SAC – and from the Plaintiff's own allegations -- that Plaintiff was aware of literally ***all*** of the relevant facts before October 21, 2023.

**First**, Plaintiff alleges that his reliance on the Defendants' representations began in May 2023, and continued through July 1, 2023:

- "Plaintiff's reliance on Defendants' statements began with the Company's May 15, 2023 press release, which publicly reaffirmed 2023 revenue guidance 'in excess of $90 million.'" SAC ¶ 12.

- "Between May and June 2023, Plaintiff and CEO Ellery Roberts had two to three phone calls . . . . Roberts's statements during these calls corroborated and reinforced the optimism conveyed in the May 15 press release." *Id.* ¶ 15.

- "In June 2023, Plaintiff purchased approximately 500,000 shares of 1847 Holdings . . . . In making this substantial investment, Plaintiff relied on the Company's public projection of $90 million in revenue and Roberts' repeated affirmations that the Company's financial outlook was strong." *Id.* ¶ 18.

- "Shortly after acquiring this position, Plaintiff asked Roberts directly whether the Company would need to engage in additional dilutive offerings. . . . Roberts assured Plaintiff that no further dilutive offerings were planned. . . . In reasonable reliance on this assurance—and believing Roberts' representations were made in good faith—Plaintiff invested approximately $365,000 in the next offering, an investment he would not have made had the truth been disclosed." *Id.* ¶ 19.

- "On July 1, 2023, Roberts sent Plaintiff a text message stating: 'Our forecast does not show us raising equity for operating purposes. As stated publicly, we see ourselves building cash from here on out.'" *Id.* ¶ 20. "Plaintiff relied on this assurance and continued purchasing and holding his shares." *Id.* ¶ 21.

**Second**, Plaintiff alleges that events in July-August 2023 "revealed that Roberts's prior statements were materially false:"

- "Only two weeks after Roberts assured Plaintiff on July 1, 2023 that the Company 'did not foresee raising equity for operating purposes' and was 'building cash from here on out,' the Company proceeded with a capital raise on July 14, 2023. This offering materially diluted existing shareholders, including Plaintiff." *Id.* ¶ 37.

- "On July 15, 2023, immediately after the capital raise, Plaintiff confronted Roberts via text message, stating in relevant part: "I took your word for it when I initially invested that you could build on cash and didn't have an equity raise in the forecast. I had friends and family members that bought in too believing they were safe from this – so I look like a complete ass." *Id.* ¶ 44 and Exhibit E.

- "Only weeks after the July 14, 2023, capital raise, two separate lenders declared 1847 Holdings LLC in default, issuing formal default notices on August 4, 2023, and August 9, 2023." *Id.* ¶ 45 and Exhibits F and G.

- "These August defaults put the lie to Roberts's repeated claims to Plaintiff in June and July 2023 that the Company was 'building cash,' did not foresee raising equity for operating purposes, and had no further offerings planned for 'at least a year.' The receipt of two default notices within five days demonstrated that the Company's cash position was far more precarious than disclosed." *Id.* ¶ 47.

- "These defaults revealed that Roberts's prior statements were materially false when made. A company that reaffirms guidance of $90 million in revenue and asserts that it is 'building cash' does not experience back-to-back lender defaults within days." *Id.* ¶ 50.

**Third**, Plaintiff alleges that he had suffered damages as a result of his detrimental reliance on Defendants' representations by August 2023:

- "On August 28, 2023, Plaintiff convened and recorded a phone call with Roberts. By this point, Plaintiff's position had already been severely damaged by the July 14 offering and the August 4 and August 9 default-triggered equity issuances." *Id.* ¶ 51.

**Fourth**, Plaintiff alleges that he learned on September 1, 2023 of the falsity of another representation made on August 28, 2023:

- "On August 28, 2023, Plaintiff convened and recorded a phone call with Roberts. *Id.* ¶ 51. "During this call, Plaintiff asked Roberts whether the Company was planning a reverse stock split." *Id.* ¶ 52. "Roberts denied that any reverse split was planned." *Id.* ¶ 54.

- "Just three days after Roberts assured Plaintiff that the Company was not planning any reverse split, 1847 Holdings publicly announced on September 1, 2023 that it

would implement a 1-for-25 reverse stock split. On September 1, 2023 -- just three days after Roberts assured Plaintiff that the Company was not planning any reverse split -- 1847 Holdings publicly announced that it would implement a 1-for-25 reverse stock split." *Id.* ¶ 57.

- "The September 1 announcement makes plain that the reverse split had already been approved internally and scheduled at the time Roberts spoke to Plaintiff. The press release stated that the reverse split would become effective on September 11, 2023, meaning the corporate process to approve the maneuver was well underway before the announcement date. Roberts's statement on August 28 denying knowledge of such a plan was therefore materially false when made." *Id.* ¶ 58.

**Fifth**, Plaintiff alleges that he was "immediately and severely harmed" in September 2023:

- "The 1-for-25 reverse split immediately and severely harmed Plaintiff's investment. Because 1847 Holdings simultaneously continued issuing shares through financings and default-related conversions, the reverse split failed to stabilize the stock price. Instead, it enabled further dilution, resulting in further catastrophic losses for Plaintiff." *Id.* ¶ 59.

**Sixth**, on September 10, 2023, Plaintiff wrote to a member of 1847 Holdings' Board of Directors, expressing his "grave concerns" that Roberts had committed "securities violations" and "fraud:"

- "REQUEST FOR AN INDEPENDENT INVESTIGATIVE COMMITTEE TO BE FORMED TO INVESTIGATE THE CONDUCT OF 1847 HOLDINGS LLC CEO/CHAIRMAN ("CEO") FOR SECURITIES VIOLATIONS/FRAUD . . . .
  I(we) are reaching out to yourself . . . prior to the possibility of 'shareholders' engaging outside council [sic] to formally represent the 'shareholder' claims/concerns. I, in my capacity as I suspect the largest 'shareholder' of the LLC, have grave concerns about the conduct of the CEO. Myself, and other shareholders, believe these concerns involve securities fraud / violations which, in our opinion, warrants a formal and fulsome independent investigation and of which we believe the Board of Directors should take seriously and initiate and follow appropriate procedures to represent the shareholders' best interest posthaste." *Id.* Exhibit D (emphasis in original).

**Seventh**, Plaintiff alleges that by mid-September 2023, he suffered a loss of $749,462.90 as "the direct and foreseeable result of Defendants' material misrepresentations, omissions, and scheme to conceal the Company's true financial condition:"

- "Faced with a rapidly deteriorating share price, Plaintiff was forced to sell his position during the week of September 11, 2023, realizing a loss of $749,462.90. This loss was the direct and foreseeable result of Defendants' material misrepresentations, omissions, and scheme to conceal the Company's true financial condition." *Id.* ¶ 62.

It would be hard to imagine a more cut-and-dried case for dismissal based on the running of the relevant statutes of limitations. There are no issues about inquiry notice, or when the Plaintiff "should have" known that he had been harmed by the Defendants' alleged misrepresentations. Instead, on the face of the SAC and by the Plaintiff's own admissions, he had ***actual knowledge*** no later than mid-September 2023 that he had relied on material misrepresentations and omissions and suffered three-quarters of a million dollars in losses as a result. Plaintiff had two years from then – or until mid-September 2025 – to file suit. Because Plaintiff did not file suit until October 21, 2025 – more than a month after all relevant statutes of limitations had run – his claims are all time-barred and should be dismissed.

## C. Even if Any of Plaintiff's Claims Had Been Timely Filed, the SAC Fails to State Any Viable Claims Against Vernice Howard or 1847 Partners

### 1. The SAC's Scant, Conclusory Allegations About Howard and 1847 Partners

The only allegations against Howard in the SAC are that (1) she has served as Chief Financial Officer of 1847 Holdings since approximately September 2021 (SAC ¶ 11); (2) she served as 1847 Partners' principal financial and accounting officer during the relevant period (*id.* ¶ 83); (3) she signed SOX certifications for financial statements that she knew (or was reckless in not knowing) were "unreliable, incomplete, and unsupported by effective internal controls," and that "materially misled investors" and "induc[ed] Plaintiff to rely on false information when buying and holding shares" (*id.* ¶¶ 83-86); (4) she acted with scienter because she certified financials she "knew were unreliable" (*id.* ¶ 98); (7) she "participated in" and "directed" the

scheme alleged in Count Two (*id.* ¶ 104); and (8) she "exercised control over 1847 Holdings' operations, disclosures, financial reporting, and responses to investors." *Id.* ¶ 107.

The only allegations against 1847 Partners in the SAC are that: (1) it serves as the external manager of 1847 Holdings (*id.* ¶ 7); (2) it financially mismanaged subsidiaries named Polished.com, ICU Eyewear, and Asien's Appliance (*id.* ¶¶ 69-70, 72, 75); (3) it was identified in SEC and DOJ investigations (*id.* ¶ 71); (4) it acted with scienter because it "oversaw the structure" and the scheme alleged in Count Two (*id.* ¶¶ 98, 104); and (5) it "exercised control over 1847 Holdings' operations, disclosures, financial reporting, and responses to investors." *Id.* ¶ 107.

### 2. Plaintiff Fails to State a Cause of Action Against Howard or 1847 Partners Under Section 10(b) and Rule 10b-5

#### a. Elements of a Cause of Action Under Section 10(b) and Rule 10b-5

To recover under Section 10(b) and Rule 10b-5, a plaintiff must prove "(1) a material misrepresentation or omission by the defendant; (2) scienter; (3) a connection between the misrepresentation or omission and the purchase or sale of a security; (4) reliance upon the misrepresentation or omission; (5) economic loss; and (6) loss causation." *Amgen Inc. v. Connecticut Ret. Plans & Tr. Funds*, 568 U.S. 455, 460–61 (2013).

The PSLRA "insists that securities fraud complaints 'specify' each misleading statement [and] that they set forth the facts 'on which [a] belief' that a statement is misleading was 'formed.'" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 81-82 (2006) (quoting *Dura Pharms, Inc. v. Broudo*, 544 U.S. 336, 345 (2005) (quoting 15 U.S.C. §§ 78u–4(b)(1))). *See also Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005) ("Any fraud must be pled with particularity, Fed.R.Civ.P. 9(b); but the rule is applied assiduously to securities fraud.").

Plaintiffs "must do more than say that the statements were false and misleading; they must demonstrate with specificity why and how that is so." *City of Hialeah Employees' Ret. Sys. v.*

*Peloton Interactive, Inc.*, 153 F.4th 288, 295 (2d Cir. 2025). *See also GE Invs. v. Gen. Elec. Co.*, 447 F. App'x 229, 231 (2d Cir. 2011) ("To satisfy this requirement, the plaintiff must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.") (internal quotation omitted).

### b. <u>Plaintiff Fails to Plead Any Material Misrepresentations by Howard or 1847 Partners</u>

Plaintiff fails to plead any material misrepresentations by Howard or 1847 Partners, much less with the required particularity. "[A] defendant must actually make a false or misleading statement in order to be held liable under Section 10(b)." *Wright v. Ernst & Young LLP*, 152 F.3d 169, 175 (2d Cir. 1998). *See also Tapia-Matos v. Caesarstone Sdot-Yam, Ltd*., No. 15-CV-6726 (JMF), 2016 WL 3951184, at *3 (S.D.N.Y. July 20, 2016) ("Defendants cannot be held liable for statements that they themselves did not make.").

Even construing the SAC liberally in favor of the Plaintiff, it alleges only five misrepresentations, none made by either Howard or 1847 Partners: (1) 1847 Holdings' May 15, 2023 press release (SAC ¶ 12); (2) Roberts' statements during telephone conversations with the Plaintiff in May/June 2023, which "reinforced the optimism conveyed in the May 15 press release" (*id.* ¶ 15); (3) Roberts' statement to Plaintiff in June 2023 that no further dilutive offerings were planned (*id.* ¶ 19); (4) Roberts' July 1, 2023 text message stating that "[o]ur forecast does not show us raising equity for operating purposes. As stated publicly, we see ourselves building cash from here on out." (*id.*, Exhibit B); and (5) Roberts' August 28, 2023 denial that any reverse split was planned (*id.* ¶ 54).[9]

---

[9] At several points in the SAC, Plaintiff alleges that "Defendants" made misrepresentations and omissions, without specifying <u>***which***</u> Defendants did so. *See*, *e.g.*, SAC ¶ 38 ("referring to "Defendants' repeated statements that the Company was financially stable and building cash."); ¶ 75 ("Plaintiff invested significant capital in 1847 Holdings

"[A] defendant can be held liable only for specific false statements to the extent that it can be said to have made those statements under Rule 10b–5(b)." *In re Alstom SA*, 406 F. Supp. 2d 433, 475 (S.D.N.Y. 2005). The SAC does not identify any misrepresentations by 1847 Partners, and does not "specify" any misrepresentations by Howard. At most, it alleges that Howard signed SOX certifications for financial statements that "falsely represented that they had disclosed all material deficiencies" (SAC ¶ 85) "while "concealing defaults, liquidity failures, overstated revenue projections, and continuous dilution events." *Id.* ¶ 86. The SAC does not identify any particular SOX certifications or any particular financial statements, and does not specify any particular misrepresentations or omissions in any financial statements. Thus, the SAC falls far short of meeting the stringent pleading requirements of the PSLRA and Rule 9(b).[10]

### c. Plaintiff's Scienter Allegations About Howard and 1847 Partners Are Completely Inadequate

The PSLRA requires that a complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C.A. § 78u-4(b)(2). A plaintiff can meet this standard by alleging facts "(1) showing that the defendants had both motive and opportunity to commit the fraud or (2) constituting strong circumstantial evidence of conscious misbehavior or recklessness." *City of Pontiac Policemen's & Firemen's Ret. Sys. v.*

___

based on Defendants' assurances regarding liquidity and financial stability."); ¶ 97 ("Defendants made material misstatements and omitted critical facts regarding the Company's liquidity, planned capital raises, lender defaults, revenue projections, and the September 2023 reverse split."); ¶ 113 ("Defendants made false statements of material fact or omitted a material fact when under a duty to disclose it") This is insufficient to state a cause of action. A securities fraud complaint "may not rely upon blanket references to acts or omissions by all of the defendants, for each defendant named in the complaint is entitled to be appraised of the circumstances surrounding the fraudulent conduct with which he individually stands charged." *Blank v. TriPoint Glob. Equities, LLC*, 338 F. Supp. 3d 194, 210 (S.D.N.Y. 2018).

[10] Since Plaintiff has failed to allege that Howard or 1847 Partners made any material misrepresentations, he cannot base any claim against Howard or 1847 Partners on alleged "omissions." Rule 10b-5 provides that it is unlawful "[t]o make any untrue statement of a material fact or to omit to state a material fact *necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading*." 17 C.F.R. § 240.10b–5 (emphasis added). "Pure omissions are not actionable under Rule 10b–5(b)." *Macquarie Infrastructure Corp. v. Moab Partners, L.P.*, 601 U.S. 257, 260 (2024).

*UBS AG*, 752 F.3d 173, 184-85 (2d Cir. 2014).  Plaintiff alleges **_no_** facts – much less particularized facts – meeting either of these standards.

Instead, Plaintiff's only scienter allegation about Howard is the conclusory assertion that she certified financial statements that she "knew were unreliable." SAC ¶ 98.  Plaintiff's allegation that the financial statements were "unreliable" falls short of even parroting the relevant standard – *i.e.*, that the financial statements contained untrue statements or omitted facts necessary to make the statements made not misleading. Plaintiff also fails to identify any particular financial statements, any particular misrepresentations or omissions in any financial statements, or facts demonstrating Howard's knowledge of untrue statements or material omissions. This is woefully inadequate.  *See*, *e.g.*, *Burch v. Pioneer Credit Recovery, Inc.*, 551 F.3d 122, 124 (2d Cir. 2008) ("a formulaic recitation of the elements of a cause of action will not do.") (*quoting Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *Lozada v. TaskUs, Inc.*, 710 F. Supp. 3d 283, 322–23 (S.D.N.Y. 2024) ("conclusory statements that defendants were aware of certain information" are insufficient to plead scienter); *In re Aegean Marine Petroleum Network, Inc. Sec. Litig.*, 529 F. Supp. 3d 111, 161 (S.D.N.Y. 2021) ("Allegations regarding a defendant's title, Board membership, and/or signatures on documents . . . are plainly insufficient to allege scienter as to each defendant.").

Plaintiff's only scienter allegation about 1847 Partners is that it "oversaw the structure" and the scheme alleged in Count Two (SAC ¶¶ 98, 104).  Scienter is defined as "a mental state embracing intent to deceive, manipulate, or defraud." *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007) (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 193-94 (1976)). Even assuming the truth of Plaintiff's allegation about 1847 Partners' oversight role, it says nothing about mental state.

### d. Plaintiff Does Not Allege that He Acted in Reliance on Any Misrepresentations by Howard or 1847 Partners

As noted above, Plaintiff does not plead a single misrepresentation or omission by 1847 Partners, and alleges only that Howard signed SOX certifications for financial statements that she "knew—or [was] reckless in not knowing—were unreliable, incomplete, and unsupported by effective internal controls." SAC ¶ 84. Plaintiff does not specify a single certification, a single financial statement, or any misrepresentation therein. Nor does Plaintiff allege that he relied upon (or even saw) any of 1847 Holdings' SOX certifications or financial statements. Absent allegations of "fraud-on-the-market" – which Plaintiff does not make here – reliance means that a plaintiff "was aware of a company's statement and engaged in a relevant transaction—e.g., purchasing common stock—based on that specific misrepresentation." *Halliburton Co. v. Erica P. John Fund, Inc*., 573 U.S. 258, 267 (2014). Plaintiff does not allege that he was aware of any specific statement made by Howard or 1847 Partners, much less that he relied on one. Plaintiff therefore has failed to plead reliance with respect to Howard and 1847 Partners.

### 3. Plaintiff Fails to State a Cause of Action Against Howard or 1847 Partners for Scheme Liability Under Section 10(b) and Rule 10b-5(a) & (c)

"To state a claim for scheme liability, a plaintiff must present facts showing (1) that the defendant committed a deceptive or manipulative act, (2) in furtherance of the alleged scheme to defraud, (3) with scienter, and (4) reliance." *Menaldi v. Och-Ziff Cap. Mgmt. Grp. LLC*, 164 F. Supp. 3d 568, 577 (S.D.N.Y. 2016) (quoting *In re Alstom SA Sec. Litig*., 406 F. Supp. 2d 433, 474 (S.D.N.Y. 2005)). Although scheme liability does not require that the defendant made a misrepresentation, plaintiffs are required to allege with particularity "what deceptive or manipulative acts were performed, which defendants performed them, when the acts were

performed, and the effect the scheme had on investors in the securities at issue." *Id.* (quoting *In re Parmalat Sec. Litig.*, 383 F. Supp. 2d 616, 622 (S.D.N.Y. 2005)).

Plaintiff fails to allege any of the required elements of scheme liability against Howard or 1847 Partners. He does not allege that they committed any deceptive or manipulative acts, that they acted with scienter, or that he relied on any of their actions.

### 4. Plaintiff Fails to State a Cause of Action Against Howard or 1847 Partners for Control Person Liability Under Section 20(a)

"To establish a prima facie case of control person liability, a plaintiff must show (1) a primary violation by the controlled person, (2) control of the primary violator by the defendant, and (3) that the defendant was, in some meaningful sense, a culpable participant in the controlled person's fraud." *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.*, 493 F.3d 87, 108 (2d Cir. 2007). Control under Section 20(a) is "the power to direct or cause the direction of the management and policies of the primary violators, whether through the ownership of voting securities, by contract, or otherwise." *Tarsavage v. Citic Trust Co.*, 3 F. Supp. 3d 137, 149 (S.D.N.Y. 2014). *See also* 17 C.F.R. § 240.12b-2 (same).

A plaintiff must establish that a defendants not only had "actual control over the primary violator," but "actual control over the transaction in question." *Bin Li v. Eqonex Ltd.*, No. 1:23-cv-03346-GHW, 2024 WL 4241951, at *17 (S.D.N.Y. Sept. 18, 2024). Boilerplate allegations based on control person "status" are insufficient. *Youngers v. Virtus Inv. Partners Inc.*, 195 F. Supp. 3d 499, 525 (S.D.N.Y. 2016). Allegations of control are insufficient when "they focus exclusively on [defendant's] 'control person status' rather than [defendant's] exercise of 'actual control over the matters at issue' and 'do not allege that [defendant] signed, drafted, approved, . . . confirmed . . . [or] ordered or encouraged [officers or directors] to sign a misleading statement." *Id.*

Even where a plaintiff adequately pleads control, he must also allege that the control person had "actual involvement in the making of the fraudulent statements by the putatively controlled entity." *Fairway Grp. Holdings Corp. Sec. Litig.*, No. 14-cv-0950, 2015 WL 249508, at *18 (S.D.N.Y. Jan. 20, 2015). "To allege culpable participation, Plaintiffs must plead at a minimum particularized facts establishing a controlling person's conscious misbehavior or recklessness in the sense required by Section 10(b)." *Cohen v. Stevanovich*, 722 F. Supp. 2d 416, 435 (S.D.N.Y. 2010).

The SAC's only allegation regarding control person liability is the conclusory assertion that Howard and 1847 Partners "exercised control over 1847 Holdings' operations, disclosures, financial reporting, and responses to investors." SAC ¶ 107. Plaintiff fails to plead that Howard or 1847 Partners had actual control over the transactions in question, that they had actual involvement in the making of fraudulent statements by 1847 Holdings, or that they culpably participated in any fraud by 1847 Holdings. The SAC thus falls far short of pleading the required elements of control person liability.

### 5. Plaintiff Fails to State a Cause of Action Against Howard or 1847 Partners for Common Law Fraud

"Courts in the Second Circuit have found that the elements of common law fraud are 'essentially the same' as those that must be pleaded to establish a claim under Section 10(b) and Rule 10b–5." *I.B. Trading, Inc. v. Tripoint Glob. Equities, LLC*, 280 F. Supp. 3d 524, 544 (S.D.N.Y. 2017). Claims for common law fraud, like claims for securities fraud, are subject to both the facial plausibility standard of Rule 12(b)(6) and the heightened pleading standard of Rule 9(b). *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC,* 797 F.3d 160, 171 (2d Cir. 2015).

Plaintiff's common law fraud claims against Howard and 1847 Partners fail as a matter of law, for the same reasons that his securities fraud claims against them fail: Plaintiff fails to plead

with particularity any material misrepresentations by Howard or 1847 Partners, scienter, or reliance.

## CONCLUSION

For the foregoing reasons, all of Plaintiff's claims against the 1847 Defendants should be dismissed with prejudice and without leave to amend.


Dated: February 17, 2026                           Respectfully submitted,

**KANE KESSLER, P.C.**

By: */s/ Arthur M. Rosenberg*
    Arthur M. Rosenberg
600 Third Avenue-35th Floor
New York, New York  10016
(212) 519-6222
arosenberg@kanekessler.com

*Attorneys for Defendants 1847 Holdings LLC, 1847 Partners LLC, Ellery W. Roberts, and Vernice Howard*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X
                                    :

MATTHEW MILLER, Individually and        :         25-cv-08606 (LAK)
as Principal of STRATEGIC RISK LLC,      :

                      Plaintiff,     :

    -against-                                :

1847 HOLDINGS LLC, 1847 PARTNERS LLC,   :
ELLERY W. ROBERTS, LOUIS A. BEVILACQUA,  :
BEVILACQUA PLLC, and VERNICE HOWARD,   :

                     Defendants.    :
                                      :
– – – – – – – – – – – – – – – – – – – – – – – – – – – – – –X

## **LOCAL RULE 7.1(c) CERTIFICATE OF WORD COUNT COMPLIANCE**

I, Arthur M. Rosenberg, hereby certify that the Memorandum of Law in Support of the 1847 Defendants' Motion to Dismiss the Second Amended Complaint complies with Local Rule 7.1(c).

I further certify that, in preparation of this Memorandum, I used Microsoft® Office Word 365 and that this word-processing program has been applied specifically to include all text, including headings, footnotes, endnotes and quotations in the following word count.

I further certify that the above-referenced Memorandum contains **7,930** words, exclusive of the caption, table of contents, table of authorities, signature blocks, and any required certificates.

Dated: February 17, 2026               Respectfully submitted,

                                      **KANE KESSLER, P.C.**
                                      By: */s/ Arthur M. Rosenberg*
                                        Arthur M. Rosenberg
                                      600 Third Avenue-35th Floor
                                      New York, New York  10016
                                      (212) 519-6222
                                      arosenberg@kanekessler.com

                                      *Attorneys for Defendants 1847 Holdings LLC,*
                                      *1847 Partners LLC, Ellery W. Roberts, and*
                                      *Vernice Howard*