UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- X
MATTHEW MILLER, Individually and as Principal of :
STRATEGIC RISK LLC,                                Index No. 1:25-cv-08606-LAK
:
                Plaintiff,
:
              -against-
:
1847 HOLDINGS LLC, 1847 PARTNERS LLC,
ELLERY W. ROBERTS, LOUIS A. BEVILACQUA, :
BEVILACQUA PLLC, and VERNICE HOWARD,
:
              Defendants.
------------------------------------------------------------------- X

# Memorandum of Law

# In Further Support of Defendants Louis A. Bevilacqua's and Bevilacqua PLLC'S Motion to Dismiss

Wilson, Elser, Moskowitz, Edelman & Dicker LLP
Attorneys for defendants Louis A. Bevilacqua and Bevilacqua PLLC
150 East 42nd Street
New York, New York 10017
(212) 490-3000

331456188v.1

**Preliminary Statement**

Through his Opposition[1] to the Bevilacqua defendants' motion to dismiss, Miller abandons the majority of his claims, failing to dispute key aspects of all of his causes of action. Rather than address the Bevilacqua defendants arguments, Miller spends the majority of his brief making allegations about 1847 Holdings and Ellery Roberts that are largely unrelated to the Bevilacqua defendants. Further, Miller continues to push his theory that actions taken by 1847 Holdings can be equated with the Bevilacqua defendants, due to their role as counsel for 1847 Holdings and "equity participant" in its "external manager." This is a failing proposition unsupported by caselaw. Miller also introduces a myriad of alleged facts that were not raised in his Second Amended Complaint ("SAC") and therefore cannot be considered on the motion to dismiss.

Miller offers scant, dissimilar caselaw to support his argument that the elements of scienter and loss causation have been met. He reiterates generalized allegations while failing to respond to the Bevilacqua defendants' analogous caselaw on these issues. As such, Miller continues to be unable to allege scienter with specificity. Miller also fails to offer a rational explanation for how the Bevilacqua defendants' statements to him - which occurred after his purchase of securities and did not substantively involve securities - could have possibly caused his loss. Similarly, Miller does not sufficiently allege with any real specificity that the Bevilacqua defendants took any action that could constitute participation in an alleged scheme besides making two alleged misstatements after the fact.

Finally, Miller's SAC confirms that he discovered the alleged fraud more than two years before he filed suit, thereby making his Securities Exchange Act claims untimely.

---

[1] Also referred to as Plaintiff's Opp. Additionally, capitalized terms are defined in the Bevilaqua defendants' moving papers.

### I. Miller Abandoned the Majority of his Claims by Not Responding to the Bevilacqua Defendants' Arguments

Miller does not present arguments refuting the majority of the Bevilacqua Defendants' contentions, therefore conceding these points. The Second Circuit has held that "[w]hen a party fails adequately to present arguments in a brief, a court may properly consider those arguments abandoned." *Malik v City of NY*, 841 F App'x 281, 284 (2d Cir. 2021) (internal quotation marks and citations removed) (upholding dismissal in part because of abandoned claims).

Regarding his securities fraud claim, Miller does not dispute several of the Bevilacqua defendants' arguments, namely that: (1) the Bevilacqua defendants did not "make" the majority of the misstatements in the SAC, (2) the alleged misstatements made by the Bevilacqua defendants are not material, (3) there is no connection between the Bevilacqua defendants' alleged statements and the sale of securities, (4) Miller did not rely on the Bevilacqua defendants' statements, and (5) forward-looking statements are safe-harbored by the PSLRA. As Miller failed to respond to the Bevilacqua defendants arguments regarding their alleged misstatements, Miller's securities fraud claim must be dismissed. *In re Turquoise Hill Resources Ltd. Sec. Litig.*, 625 F Supp 3d 164, 221 (Hon. Lewis J. Liman, U.S.D.J., Sep 2, 2022 S.D.N.Y.) ("Plaintiff has indicated that they do not oppose the . . . Defendants' motion to dismiss as to these two statements. Plaintiffs have therefore abandoned their Section 10(b) claims with respect to these statements."); *Doubleline Capital LP v Odebrecht Fin., Ltd.*, 323 F Supp 3d 393, 449 (Hon. Gregor Wood, U.S.D.J., Aug 8, 2018 S.D.N.Y) ("Plaintiffs do not oppose this argument and have, therefore, abandoned their Section 10(b) claim in connection with this misstatement.").

With regard to scheme liability, Miller does not bother to address the argument that (1) alleged misstatements alone are insufficient for a scheme liability claim, and (2) reliance has not been established, thereby conceding these arguments. Further, Miller does not address any of the

Bevilacqua defendants' arguments relating to control-person liability or common-law fraud. Rather, Miller *only disputes* the timeliness of the SAC, scienter, causation, and makes general arguments for his scheme liability cause of action. As such, Miller has partially-abandoned his argument regarding scheme liability and has completely abandoned his claims for control-person liability and common-law fraud. *Black Lives Matter v Town of Clarkstown*, 354 F Supp 3d 313, 328 (Hon. Nelson Roman, Nov 14, 2018, S.D.N.Y.) ("The failure to oppose a motion to dismiss a claim is deemed abandonment of the claim.").

As Miller does not dispute the Bevilacqua defendants' arguments pertaining to multiple essential elements of each of his causes of action, they should be dismissed on this basis alone.

## II. The Court Should Not Consider New Allegations Made By Miller

Miller improperly presents allegations regarding the Bevilacqua defendants for the first time in his Opposition. As he did not make these allegations in his SAC, the Court should not consider this new information. *Ward v Andrews McMeel Publ'g, LLC*, 963 F Supp 2d 222, 231 (Hon. Paul Crotty, U.S.D.J., Aug 1, 2013 S.D.N.Y.) ("new facts and allegations, first raised in a Plaintiff's opposition papers, may not be considered in deciding a motion to dismiss.") (internal quotation marks removed); *Colliton v Bunt*, 709 F App'x 82, 83 (2d Cir 2018) ("generally, courts cannot consider new factual assertions in an affidavit submitted in opposition to a motion to dismiss.").

A large portion of Miller's Opposition relates to newly presented allegations, including his claims that: Louis Bevilacqua held "9-10% equity in 1847 Partners, Louis Bevilacqua had actual knowledge of prior litigation involving 1847 Partners and other co-defendants, Louis Bevilacqua served as 1847 Holdings securities counsel since 2014, Louis Bevilacqua was copied on "SEC scrutiny" sent to 1847 Holdings, Louis Bevilacqua was named through 1847 Partners in

3

separate litigation, Louis Bevilacqua observed "escalating secured borrowing" that included $100 million from Bank of America, and Louis Bevilacqua "observed the acceleration, account seizure, and subsequent subsidiary bankruptcies" of 1847 Holdings. Plaintiff's Opp. pg. 8, 10, 17. Miller's Opposition also contains a litany of new alleged facts regarding the structure of 1847 Holdings alleged scheme and the management agreement between 1847 Holdings and 1847 Partners that are not contained in the SAC. Plaintiff's Opp. pg. 4, 9. All of this new information, which does not even strengthen Miller's causes of action, should not be considered by the Court as a matter of law as Miller did not timely make these arguments in his SAC.

### III. The SAC Confirms That the Bevilacqua Defendants are not the Subject of Miller's Claims

As detailed in the Bevilacqua defendants' motion to dismiss, the SAC only makes brief mention of the Bevilacqua defendants and largely focuses on the alleged actions other co-defendants. In fact, the SAC only states that the Bevilacqua defendants made two alleged misstatements to Miller after he had already completed his purchase and sale of securities. Miller acknowledges that his SAC is not centered on the Bevilacqua defendants, stating in his preliminary statement that "this action arises from a series of deliberate misstatements, omissions, and other manipulative practices undertaken by 1847 Holdings LLC . . . and its Chief Executive Officer, Ellery Roberts, beginning in 2023."[2] Plaintiff's SAC pg.1. As such, Miller's claims should be dismissed against the Bevilacqua defendants as they are not the actual subject of Miller's allegations.

### IV. Scienter is Absent

Miller doubles down on his strategy of attempting to prove scienter by arguing that the Bevilacqua Defendants were financially motivated by their role as counsel to 1847 Holdings and

---

[2] The Bevilacqua defendants do not concede that 1847 Holdings or Mr. Roberts took these alleged actions.

"equity participant" in the "external manager" of 1847 Holdings. Miller provides no caselaw in which scienter was established based on a defendant's status as counsel or non-controlling equity holder in an external manager. Further, Miller does not dispute the caselaw provided by the Bevilacqua defendants affirming that scienter can't be established on such a weak basis, thereby conceding the validity of these cases. *See, e.g., Acito v. IMCERA Group*, 47 F.3d 47 (2d Cir. 1995) (dismissing complaint because plaintiffs' allegation that defendants were motivated to defraud the public because an inflated stock price would increase their compensation is without merit since "[i]f scienter could be pleaded on that basis alone, virtually every company in the United States that experiences a downturn in stock price could be forced to defend securities fraud actions."); *In re Citigroup, Inc. Sec. Litig.*, 330 F.Supp.2d 367, 382 (Hon. Laura Swain, U.S.D.J., Aug. 10, 2024, S.D.N.Y.) (granting motion to dismiss and finding that a defendant's "position as an officer alone . . . is insufficient to support an inference of scienter.").

In support of his scienter argument, Miller cites *ATSI Commc'ns, Inc. v. Shaar Fund, Ltd.* for the general proposition that motive exists when defendants receive a concrete and personal benefit from the alleged fraud. 493 F.3d 87 (2d Cir.2007). This case is dissimilar, does not relate to defendants comparable to the Bevilacqua defendants, and was dismissed for failure to meet the element of scienter, thereby demonstrating the difficult nature of the heightened standard. Miller also refers to *Novak v. Kasaks* to support his argument that scienter can be proven by strong circumstantial evidence of conscious misbehavior or recklessness. 216 F.3d 300 (2d Cir. 2000). This action was brought against dissimilar defendants, including "several officers at the highest levels of management" who are not analogous to the Bevilacqua defendants, and Miller does not even attempt to argue that the facts of the case are comparable. *Id.* at 303. Miller also supports his scienter argument by citing *Tellabs, Inc. v Makor Issues & Rights, Ltd.*, a case in

which a judgement holding that scienter was sufficiently alleged was vacated and remanded. 551 US 308, 313 (2007). None of the caselaw cited by Miller is comparable to the facts of this case and he appears to cite them simply for the general rule regarding scienter.

Further, Miller perplexingly supports his scienter argument by referring to the irrelevant and non-authoritative New York Rules of Professional Conduct regarding the conflict of interest that can arise when an attorney has an equity interest in a client-related entity. This argument has no bearing on the element of scienter and it is unclear what purpose it is supposed to serve. Miller also cites to a nearly half a century old case to support his argument that attorneys participating in securities transactions cannot rely on "business judgement" where fiduciary obligations to shareholders are implicated. *National Student Marketing Corp.*, 457 F. Supp. 682 (D.D.C. 1978). As the Bevilacqua defendants did not make any mention of the "business judgement" rule in their motion to dismiss, Miller is fighting against a straw man with his reference to an irrelevant, archaic case from a non-authoritative court in a different district.

Finally, Miller's argument that scienter is established because the Bevilacqua defendants had knowledge of the structure and debt of 1847 Holdings, knew about default notices received by the company, were copied on interactions with the SEC, and knew of prior lawsuits involving 1847 Holdings is unavailing. Miller provides no analogous caselaw supporting the notion that an attorney's general knowledge of a company's structure, finances, and dealings establish scienter.

V. Causation is Lacking

Miller dedicates a mere three sentences to his causation argument in which he argues that loss causation has been established. The case in which he cites to support his argument, *Lentell v Merrill Lynch & Co.*, held that "it is long settled that a securities-fraud plaintiff *must prove both transaction and loss causation*." 396 F3d 161, 172 (2d Cir 2005) (internal quotation marks

6

removed) (emphasis added). As Miller does not dispute that he failed to establish transaction causation, he has failed to meet this element.

Regardless, Miller does not adequately plead loss causation as the complaint does not allege "facts that support an inference that [the Bevilacqua defendants'] misstatements and omissions concealed the circumstances that bear upon the loss suffered such that plaintiffs would have been spared all or an ascertainable portion of that loss absent the fraud." *Id.* at 175 (dismissing complaint for failure to allege causation). To support his claim, Miller alleges in his Opposition that there was a concealed risk of 1847 Holdings' "structural dependence on debt financing and fragile covenant compliance" that materialized when "coordinated lender defaults occurred." Plaintiff's Opp. at pg. 23. In the SAC, Miller does not allege that the Bevilacqua defendants made any misstatements regarding this alleged concealed risk, and he does not state with specificity that the Bevilacqua defendants were involved in this occurrence. Further, according to the facts as alleged in the complaint, Miller would not have been spared any amount of his loss if the Bevilacqua defendants had not made their alleged misstatements. In fact, the timing and substance of the Bevilacqua defendants' statements, which occurred after Miller's purchase of securities and did not concern the value of securities, make causation an impossibility. Therefore, Miller has failed to establish this element as well.

### VI. Miller Does Not Rebut Arguments Regarding Scheme Liability

Miller argues that *Janus Capital Group, Inc. v. First Derivative Traders,* which the Bevilacqua defendants cite solely to support their argument that Miller's first cause of action for securities fraud should be dismissed, does not rebut his third cause of action for scheme liability. 564 U.S. 135 (2011). As the Bevilacqua defendants never argued that *Janus Capital Group, Inc.* relates to scheme liability, Miller is once again rebutting non-existent arguments rather than the

actual positions put forth by the Bevilacqua defendants. Further, Miller does not dispute the actual argument made by the Bevilacqua defendants that under *Janus Capital Group, Inc.*, the Bevilacqua defendants did not "make" the majority of the statements he refers to the SAC, thereby conceding this point as well.

In the SAC, Miller did not adequately allege with any specificity that the Bevilacqua defendants took any action besides making two statements to Miller. Miller now makes vague and generalized claims that the Bevilacqua defendants took other actions to facilitate the alleged scheme, stating that they "participated in and facilitated a deceptive course of conduct, including legal coordination of defaults, capital-structure responses, and deterrence of audit scrutiny, while remaining economically aligned with the fee-recipient external manager." Plaintiff's Opp. at pg. 24. He also makes claims of the Bevilacqua defendants' "structural participation and economic alignment" with the scheme. *Id.* These alleged actions, most of which are not directly attributed to the Bevilacqua defendants in the SAC, lack adequate specificity and do not support Miller's claim. *Plumber & Steamfitters Local 773 Pension Fund, Boston Retirement Sys. v. Danske Bank A/S*, 11 F.4th 90, 105 (2d Cir. 2021) (dismissing scheme liability claims where plaintiff did not "articulate with precision the contours of an alleged scheme to defraud investors, or which specific acts were conducted in furtherance of it."). Accordingly, Miller fails to state a claim for scheme liability.

### VII. Miller's Complaint Proves His Securities Exchange Act Claims are Untimely

Miller fails to adequately argue that his claims are timely. A claim brought under the Securities Exchange Act must be brought by the earlier of either "(1) 2 years after the discovery of the facts constituting the violation; or (2) 5 years after such violation." 28 U.S.C.S. §1658 (b).

Miller offers no explanation for why the 5-year limitation should apply. Therefore, the 2-year statute of limitations is applicable.

Miller seems to argue that the statute of limitations began running in February 2024 because certain parts and consequences of the alleged fraud (such as 1847 Holdings' subsidiaries going into bankruptcy) did not occur until February 2024. Plaintiff's Opp. pg. 24.  Regardless, Miller himself confirms that he became aware of the alleged fraud prior to September 11, 2023. Specifically, according to the facts as stated in the SAC, Miller became aware that he had been lied to regarding 1847 Holdings' plans to execute dilutive offerings and reverse stock splits prior to September 11, 2023. Plaintiff's SAC  ¶19, 21, 31, 61, 62. Miller claims that he was aware of the amount of money he allegedly lost as of the week of September 11, 2023, and sold his position as a result of an obviously deteriorating stock price. *Id.* at ¶62. Miller was so sure that fraud had occurred that he formally requested an audit to uncover the truthfulness of 1847 Holdings' previous statements on September 11, 2023. *Id.* at ¶63. It is incredulous for Miller to argue that he had not discovered the alleged fraud while simultaneously claiming that at the same time he knew he had been lied to, had already sustained a loss, and was investigating alleged fraud.

As "a plaintiff in a federal securities case will be deemed to have discovered fraud for purposes of triggering the statute of limitations when a reasonable investor of ordinary intelligence would have discovered the existence of the fraud," the statute of limitations began running by the latest on September 11, 2023, thereby making Miller's claims untimely. *Dodds v Cigna Sec., Inc.*, 12 F.3d 346, 350 (2d Cir. 1993), citing *Armstrong v. McAlpin*, 699 F.2d 79, 88 (2d Cir. 1983).

9

**Conclusion**

It is respectfully submitted that for all the foregoing reasons, the Bevilacqua defendants' motion to dismiss should be granted in its entirety, the SAC should be dismissed, and the Court should award such other and further relief as it deems just and proper.

Dated: March 10, 2026

                                          Yours, etc.

                    WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP

By:         */s/*

Evgenia Soldatos-Mouzouris
Joseph L. Francoeur
*Attorneys for Defendants*
*Louis A. Bevilacqua and*
*Bevilacqua PLLC*
150 East 42nd Street
New York, New York 10017
(212) 490-3000

**Certification**

Pursuant to Local Civil Rule 7.1(c), I certify that the foregoing memorandum of law in support complies with the word-count limitations and contains 2854 words, exclusive of the caption, table of contents, table of authorities, signature block, and this certificate.

Dated: March 10, 2026

                                          /s/

                              Evgenia Soldatos-Mouzouris