UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MATTHEW MILLER,

Plaintiff,

-against-                                                25-cv-8606 (LAK)

1847 HOLDINGS LLC, et al.,

Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: __4/20/2026__

**MEMORANDUM OPINION GRANTING MOTION OF 1847 DEFENDANTS
TO DISMISS THE SECOND AMENDED COMPLAINT**

Appearances:

> Kevin D. Galbraith
> THE GALBRAITH LAW FIRM
> *Attorney for Plaintiff*
>
> Arthur M. Rosenberg
> KANE KESSLER, P.C.
> *Attorney for Defendants 1847 Holdings LLC, 1847
> Partners LLC, Ellery W. Roberts, and Vernice
> Howard*
>
> Joseph L. Francoeur
> Evgenia Soldatos-Mouzouris
> WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER
> LLP
> *Attorneys for Defendants Louis A. Bevilacqua and
> Bevilacqua PLLC*

2

LEWIS A. KAPLAN, *District Judge.*

Plaintiff Matthew Miller[1] in 2023 made investments ultimately totaling almost a million dollars in stock of a small, rather speculative company called 1847 Holdings LLC (the "Company"), the shares of which were and are traded on the NYSE American.  In a few short months, plaintiff lost about three quarters of his money.  He here sues the Company, an affiliate, two of the Company's officers (collectively, "1847 Defendants"), and its outside counsel and his law firm (collectively, "Bevilacqua Defendants") claiming fraud.  The matter is before the Court on a motion to dismiss by 1847 Defendants.

---

[1]

The Second Amended Complaint ("SAC") alleges that Mr. Miller purchased the shares in question, which at some point exceeded 5 percent of 1847 Holding LLC's outstanding shares. SAC (Dkt 36) ¶¶ 4, 18, 22, 24.  Rule 13d-1 of the Securities Exchange Act of 1934 (the "Exchange Act") requires that a direct or indirect beneficial owner of more than 5 percent of a class of an issuer's registered shares file a report on Schedule 13D or 13G.  17 C.F.R. § 240-13d-1 (2025).  The Court takes judicial notice that Schedules 13G were filed with respect to the shares purchased by Mr. Miller, albeit listing Strategic Risk, LLC ("SRL") as the beneficial owner and signed by Mr. Miller as "Founder/CEO."  *E.g.*, Strategic Risk, LLC, Schedule 13G (Aug. 22, 2023).  Mr. Miller's counsel has represented that Mr. Miller in fact purchased the shares through his personal brokerage account, that Mr. Miller exercised sole control over that account, that SRL "was not the purchaser, holder, or beneficial owner of the securities at issue," that SRL suffered no losses, and that SRL "was referenced because Plaintiff utilized that entity in connection with his securities reporting obligations, including filings such as Schedule 13G and Form 4."  Galbraith Decl. (Dkt 68) ¶¶ 6, 8, 10.

Defendants have taken no position with respect to the consequence, if any, of this possible misrepresentation of the identity of the beneficial owner of the securities.  Accordingly, the Court takes no action.

3

### *Discussion*

For purposes of this motion, the Court assumes the truth of the well-pleaded allegations of the SAC and draws all reasonable inferences therefrom in favor of plaintiff.[2] That said, it would serve no useful purpose to describe all of the contents of this lengthy and involved pleading for a simple reason – much of it is quite immaterial to plaintiff's claim.

Plaintiff's claim, stripped to its essentials, is that he purchased his initial Company shares in mid-June 2023, and additional shares in July, and perhaps also in August, all allegedly on the basis of fraudulent misrepresentations by 1847 Defendants.[3] He then sold his entire holdings during the week of September 11, 2023.[4] In this action, which he commenced on October 17, 2025, he asserts two Rule 10b-5 claims and one control-person liability claim under the Exchange Act and

---

[2]

It excludes all materials outside of and neither incorporated into nor integral to the SAC, as it would be inappropriate at this juncture to convert the motion to dismiss into a motion for summary judgment as otherwise would be required. Fed. R. Civ. P. 12(d). In addition, some of these materials are incomplete, of unestablished authenticity, possibly false or misleading, otherwise objectionable, or a combination thereof. *See, e.g.*, 1847 Defs.' Mar. 13, 2026 Letter (Dkt 62). Hence, the Court does not consider plaintiff's two affidavits or the attachments thereto (Dkts 56-1 through 56-3, 57-1 through 57-7), the letters from plaintiff's counsel or the attachments thereto (Dkts 60, 60-1 through 60-2, 61, 61-1 through 61-5), or the letter from Bevilacqua Defendants' counsel (Dkt 64).

[3]

SAC (Dkt 36) ¶¶ 4, 18, 22, 44.

The Court parenthetically notes, though the point is immaterial, that the Schedule 13G reports signed by plaintiff and filed with the SEC on behalf of the entity that plaintiff claims reported his purchases once he reached the reporting threshold made purchases on August 20 and 22, 2023, and none thereafter. *See, e.g.*, Strategic Risk, LLC, Schedule 13G (Aug. 22, 2023) (The conclusion that this particular filing reflects a small purchase of Company shares is derived from the fact that plaintiff's August 21, 2023 Schedule 13G reported ownership of 3,958,424 shares while the August 22, 2023 Schedule 13G reported ownership of 4,000,000 shares and that the event that required the August 22, 2023 filing occurred on August 22, 2023. Accordingly, plaintiff's last reported acquisition of Company shares was on August 22, 2023.).

[4]

SAC (Dkt 36) ¶ 62 ("Plaintiff was forced to sell his position during the week of September 11, 2023, realizing a loss of $749,462.90."); *id.*, Ex. H (Dkt 36-8).

4

one claim of common law fraud – all claims that he was misled in connection with his purchases and holding of his Company shares.[5]

*Exchange Act Claims*

The statute of limitations that governs the Exchange Act claims is Section 1658(b) of the Judicial Code, which provides in relevant part that:

> "[A] private right of action that involves a claim of fraud, deceit, manipulation, or contrivance in contravention of a regulatory requirement concerning the securities laws . . . may be brought not later than the earlier of—
>
> (1) 2 years after the discovery of the facts constituting the violation; or
>
> (2) 5 years after such violation."[6]

As this case was commenced on October 17, 2025, it is time barred if plaintiff discovered the facts constituting the alleged violation before October 17, 2023, as 1847 Defendants claim.

To be sure, the statute of limitations is an affirmative defense that typically is asserted in a defendant's answer. But the issue properly can be resolved on a motion to dismiss a complaint where the facts needed to do so "can be gleaned from the complaint and papers . . . integral to the

---

[5] There is no reason to address any claim under the Exchange Act to the effect that plaintiff was misled into holding his Company shares, as Exchange Act Section 10(b) and Rule 10b-5 provide a private right of action to "only persons induced to buy or sell securities (and not persons induced to hold them)." *In re Kingate Mgt. Ltd. Litig.*, 784 F.3d 128, 139-40 (2d Cir. 2015); *see also Menora Mivtachim Ins. Ltd. v. Frutarom Indus. Ltd.*, 54 F.4th 82, 84 (2d Cir. 2022) ("Under the purchaser-seller rule, standing to bring a claim under Section 10(b) is limited to purchasers or sellers of securities about which a misstatement was made.") (citing *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723 (1975)); 2 LOUIS LOSS, JOEL SELIGMAN & TROY PAREDES, FUNDAMENTALS OF SECURITIES REGULATION 1396-98 (2011).

[6] 28 U.S.C. § 1658(b).

complaint."[7]  So the question here is whether plaintiff discovered the facts constituting the alleged

Exchange Act violations before October 17, 2023.

The Court begins with the elements of the Rule 10b-5 violations asserted.  In general:

"In order to state a cause of action under section 10(b) and Rule 10b–5, 'a plaintiff must plead that [1] in connection with the purchase or sale of securities, the defendant, [2] acting with scienter, [3] made a false material representation or omitted to disclose material information and that [4] plaintiff's reliance on defendant's action [5] caused [plaintiff] injury.'"[8]

Here, the SAC explicitly alleges that 1847 Defendants, commencing in May 2023,

made false material representations or omitted to disclose material information in connection with

plaintiff's purchases, in the period June through July or mid-August 2023, that plaintiff relied upon

those alleged misrepresentations or omissions in purchasing and holding his shares, and that he sold

all his shares at a loss during the week of September 11, 2023.  Since plaintiff admittedly knew

before October 17, 2023, each and every element of his present Exchange Act claims, his principal

effort to save those claims from dismissal for untimeliness is the contention that *Merck & Co., Inc.*

---

[7]

 *Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 412 (2d Cir. 2008) (quoting *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 168 (2d Cir. 2005)) (omission in original).

 *Staehr* and other cases cited by 1847 Defendants endorsed this principle in circumstances in which the accrual of the cause of action depended upon when the plaintiff had inquiry notice. Plaintiff here would take comfort in that distinction, asserting that the running of the Section 1658(b) "discovery" prescriptive period begins only upon "the discovery of the facts constituting the violation," which, he contends, is more forgiving to plaintiffs than the inquiry-notice standard.  But that is beside the point for which the Court relies upon those cases.  The Court's point here is that the limitations defense properly can be adjudicated on a motion to dismiss a complaint whenever, accepting as true the well-pleaded allegations of the complaint and drawing all reasonable inferences against the movant, the plaintiff's claim is time barred – whether the claim accrued upon inquiry notice, upon discovery of the facts constituting the violation, or some other applicable standard.

[8]

 *Chill v. Gen. Elec. Co.*, 101 F.3d 263, 266 (2d Cir. 1996) (quoting *Acito v. IMCERA Grp., Inc.*, 47 F.3d 47, 52 (2d Cir. 1995) (sixth alteration in original).

6

*v. Reynolds*[9] states that the running of the prescriptive period begins only upon the plaintiff's knowledge of "the fact of scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'"[10] His Exchange Act claims are timely, he contends, because the SAC alleges merely that he perhaps was suspicious or aware of potential wrongdoing, but he did not discover facts showing *scienter* until after October 17, 2023.

To be sure, plaintiff accurately quotes *Merck & Co.* It indeed does state that the prescriptive period begins only upon the plaintiff's knowledge of "the fact of scienter, 'a mental state embracing intent to deceive, manipulate, or defraud.'"[11] But *Merck & Co.* made it abundantly clear that the word "'discovery' as used in [Section 1658(b)] encompasses not only those facts the plaintiff actually knew, but also those facts a reasonably diligent plaintiff would have known."[12]

In arguing that his knowledge may be characterized as mere suspicion or awareness of "potential wrongdoing,"[13] he steadfastly ignores the many inconsistent allegations in his own complaint. As 1847 Defendants persuasively demonstrate, plaintiff by his own admission was perfectly well aware of "the fact of scienter, 'a mental state embracing intent to deceive, manipulate,

---

[9]    559 U.S. 633 (2010).

[10]    *Id.* at 637 (quoting *Ernst & Ernst v. Hochfelder*, 425 U.S. 185, 194 n.12 (1976)).

[11]    *Merck & Co.*, 559 U.S. at 637 (quoting *Ernst & Ernst*, 452 U.S. at 194 n.12).

[12]    559 U.S. at 648.

[13]    Pl.'s Opp'n (Dkt 56) at 14.

or defraud,'"[14] long before October 17, 2023.  There is no need to do any more than quote 1847

Defendants' reply memorandum on this point:

> "Plaintiff's attempt at revisionist history is unavailing, as the SAC alleges that Plaintiff **_knew_** in July-September 2023 that he had been lied to and defrauded.
>
> **First**, according to the SAC, '[o]n July 1, 2023, Roberts sent Plaintiff a text message stating: "Our forecast does not show us raising equity for operating purposes.  As stated publicly, we see ourselves building cash from here on out."  The SAC proceeds to allege that Plaintiff **_knew_** in July-September 2023 that that [*sic*] Roberts had intentionally deceived him:
>
> > •      'the Company proceeded with a capital raise on July 14, 2023,' '*[o]nly two weeks after Roberts assured Plaintiff*' that it had no plans to do so."
> >
> > •      'On July 15, 2023, *immediately after the capital raise, Plaintiff confronted Roberts via text message, stating in relevant part: "I took your word* [on July 1, just two weeks earlier,] *for it when I initially invested* that you could build on cash and didn't have an equity raise in the forecast.  I had friends and family members that bought in too believing they were safe from this - so *I look like a complete ass.*"'
> >
> > •      '*Only weeks after* the July 14, 2023, capital raise, two separate lenders declared 1847 Holdings LLC in default . . . . *These August defaults put the lie to Roberts's repeated claims to Plaintiff . . . . These defaults revealed that Roberts's prior statements were materially false when made.  A company that reaffirms guidance of $90 million in revenue and asserts that it is "building cash" does not experience back-to-back lender defaults within days.*'
>
> **Second,** the SAC alleges that '[o]n August 28, 2023, Plaintiff . . . . asked Roberts whether the Company was planning a reverse stock split . . . . Roberts denied that any reverse split was planned.'  Again, the SAC proceeds to allege that Plaintiff **_knew_** within a matter of days that he had been defrauded:
>
> > •      '*Just three days after Roberts assured Plaintiff that the Company was not planning any reverse split, 1847 Holdings publicly announced on September 1, 2023 that it would implement a 1-for-25 reverse stock split.*'

---

[14]      *Merck & Co.*, 559 U.S. at 637 (quoting *Ernst & Ernst*, 452 U.S. at 194 n.12).

8

- *'The September 1 announcement makes plain that the reverse split had already been approved internally and scheduled at the time Roberts spoke to Plaintiff.* The press release stated that the reverse split would become effective on September 11, 2023, meaning *the corporate process to approve the maneuver was well underway before the announcement date. Roberts's statement on August 28 denying knowledge of such a plan was therefore materially false when made.'*

**Third**, on September 10, 2023 – the day before the reverse split was to become effective – Plaintiff wrote to a member of 1847 Holdings' Board of Directors, accusing Roberts of 'SECURITIES VIOLATIONS/FRAUD.' The next day, Plaintiff sold all of his shares in 1847 Holdings. These are not the words and actions of a shareholder who 'merely' sees 'red flags' or only has 'suspicion or generalized awareness of potential wrongdoing.'

Plaintiff also argues that '[t]he SAC pleads that later developments—most importantly the coordinated default mechanics and their downstream effects, the capital-structure consequences, and the later collapse trajectory—materially clarified the fraudulent alignment and scienter in a way not knowable at the time of an audit demand.' But these 'later developments' all took place in August and September 2023. The supposedly 'coordinated default mechanics' occurred on August 4 and 9, 2023. The SAC alleges that those defaults 'triggered mandatory equity conversions under the Company's financing agreements,' and that '[t]he equity issuances resulting from the defaults caused an ***immediate*** collapse in the stock price.'"[15]

There is no plausible reading of plaintiff's own words that would be consistent with his suggestion that he merely was suspicious, or on inquiry notice, by the time he sold out his position the week of September 11, 2023. Accepting for the purposes of this motion as true, he was convinced by clear circumstantial evidence that the Company and its head, Ellery Roberts, had lied when Roberts (a) told him just two weeks before the July 14 equity raise that the Company's "forecast does not show [it] raising equity for operating purposes,"[16] (b) reaffirmed the $90 million revenue forecast

---

[15]

1847 Defs.' Reply (Dkt 59) at 2-4 (omissions and most alterations in original) (internal citations omitted).

[16]

SAC (Dkt 36) ¶ 20.

9

and that the Company was "building cash" shortly before defaulting on two loans,[17] and (c) told him just days before announcing a 1-for-25 reverse stock split that the Company had no such plan.  At an absolute minimum, his own allegations show that plaintiff knew, well before October 17, 2023, that – to quote *Merck & Co.* again – "it [wa]s 'at least as likely as' not that [1847 Defendants] acted with the relevant knowledge or intent" to deceive.[18]  These circumstances went far beyond suspicion or inquiry notice.

Plaintiff's fallback position is that his Exchange Act claims are timely under the five-year statute of repose in Section 1658(b).  But that is not remotely meritorious.  The statute provides that Exchange Act claims may be brought no later than *the earlier* of two years after the discovery of facts constituting the violation and five years after the violation.  As a matter of definition, a violation necessarily occurs at or before its discovery.  Two years after its discovery necessarily and invariably is earlier than five years after its occurrence.

*Common Law Fraud Claim*

Plaintiff asserts a common law fraud claim based on the same allegations as those underlying the Exchange Act claims.  The only jurisdictional basis for that claim is supplemental jurisdiction.  While a district court that has disposed of all claims arising under federal law nevertheless retains the authority to retain supplemental state law claims, the exercise of that authority is discretionary.

---

[17]  *Id.* ¶ 47.

[18]  559 U.S. at 649 (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 531 U.S. 308, 328 (2007)).

10

Were the statute of limitations applicable to the common law fraud claim the same as that applicable to the Exchange Act claims, it would have made sense to decide the motion on the merits of the fraud claim as well. The New York statute of limitations on fraud claims, however, is the *greater* of two years from the actual or imputed discovery of the fraud and six years from the date the cause of action accrued.[19]    Accordingly, the fraud claim may not be dismissed on the same grounds as are the Exchange Act claims. There nonetheless is no persuasive reason to retain the supplemental state law claim here.

### *Conclusion*

The motion of 1847 Holdings LLC, 1847 Partners LLC, Ellery W. Roberts, and Vernice Howard to dismiss the SAC (Dkt 51) is granted. The dismissal of the claims under the Exchange Act and Rule 10b-5 is on the merits. The dismissal of the common law fraud claim is on the ground that the Court chooses not to exercise its discretion to proceed with that claim.

SO ORDERED.

Dated:        April 18, 2026

Lewis A. Kaplan
United States District Judge

---

[19] N.Y. C.P.L.R. § 213(8) (McKinney's 2026).