UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

MATTHEW MILLER,

                       Plaintiff,

          -against-                         25-cv-8606 (LAK)

1847 HOLDINGS LLC, et al.,

                       Defendants.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

USDS SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 4/20/2026

## MEMORANDUM OPINION GRANTING MOTION OF BEVILACQUA DEFENDANTS TO DISMISS THE SECOND AMENDED COMPLAINT

Appearances:

Kevin D. Galbraith
THE GALBRAITH LAW FIRM
*Attorney for Plaintiff*

Arthur M. Rosenberg
KANE KESSLER, P.C.
*Attorney for Defendants 1847 Holdings LLC, 1847 Partners LLC, Ellery W. Roberts, and Vernice Howard*

Joseph L. Francoeur
Evgenia Soldatos-Mouzouris
WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP
*Attorneys for Defendants Louis A. Bevilacqua and Bevilacqua PLLC*

LEWIS A. KAPLAN, *District Judge.*

Plaintiff Matthew Miller[1] in 2023 made investments ultimately totaling almost a million dollars in stock of a small, rather speculative company called 1847 Holdings LLC (the "Company"), the shares of which were and are traded on the NYSE American. In a few short months, plaintiff lost about three quarters of his money. He here sues the Company, an affiliate, two of the Company's officers (collectively, "1847 Defendants"), and its outside counsel and his law firm (collectively, "Bevilacqua Defendants") claiming fraud. The matter is before the Court on Bevilacqua Defendants' motion to dismiss.

## *Discussion*

For purposes of this motion, the Court assumes the truth of the well-pleaded allegations of the SAC and draws all reasonable inferences therefrom in favor of plaintiff.[2] The Court assumes also familiarity with the Company Decision.

Bevilacqua Defendants' situation is much different from that of 1847 Defendants. They are said to have been outside counsel to the Company and, in addition, to have held some

---

[1] As noted in the contemporaneously issued decision on the motion by 1847 Holdings LLC, 1847 Partners LLC, Ellery W. Roberts, and Vernice Howard (the "Company Decision"), the Second Amended Complaint ("SAC") alleges that Mr. Miller purchased the shares in question, which at some point exceeded 5 percent of 1847 Holdings LLC's outstanding shares. Schedules 13G, however, were filed not in Mr. Miller's name, but in that of Strategic Risk, LLC. The Court incorporates here note 1 in the Company Decision dealing with this discrepancy.

[2] As noted in the Company Decision, the Court excludes from its consideration all materials outside of and neither incorporated into nor integral to the SAC. The Court incorporates here note 2 in the Company Decision detailing its reasoning for doing so and describing the materials appropriately not considered.

unspecified equity interest in the Company's external manager, 1847 Partners LLC.[3] Apart from being named as defendants, Bevilacqua Defendants are referred to in only nine numbered paragraphs of the 118-paragraph complaint. Three of those nine paragraphs merely describe Bevilacqua Defendants.[4] The next three allege events or circumstances that occurred (a) after plaintiff had made all of his purchases of Company shares and (b) after the alleged misstatements or omissions discussed in the Company Decision had been made.[5] Indeed, the SAC substantively mentions Bevilacqua Defendants for the first time when it accuses them of taking some action some time around September 14, 2023,[6] at which point plaintiff already had sold, or was in the process of selling, all of his Company shares. The last three paragraphs that mention Bevilacqua Defendants make purely conclusory allegations that Bevilacqua Defendants acted with *scienter*,[7] participated in the alleged fraudulent scheme,[8] and "exercised control over 1847 Holdings' operations, disclosures, financial reporting, and responses to investors."[9]

---

[3] SAC (Dkt 36) ¶ 64.

[4] *Id.* ¶¶ 7, 9-10.

[5] *Id.* ¶¶ 64-66.

[6] *Id.* ¶ 65; *id.*, Ex. I (Dkt 36-9).

[7] SAC (Dkt 36) ¶ 98.

[8] *Id.* ¶ 104.

[9] *Id.* ¶ 107.

On this shaky foundation, plaintiff seeks to erect a structure – to mix the metaphor – of Exchange Act and common law fraud claims against Bevilacqua Defendants. It is unnecessary to mention more than a few of the many deficiencies of this structure, inevitably resulting in collapse.

Bevilacqua Defendants are not said to have made any of the alleged misstatements or omissions upon which plaintiff allegedly relied. As the alleged fraud must be in connection with a purchase or sale of a security in order to be actionable under Section 10(b) of the Exchange Act,[10] there is no legally sufficient claim against Bevilacqua Defendants on a primary liability theory.

Nor does the attempt to portray those alleged misstatements or omissions as part of a broader and longer-lasting scheme avail plaintiff. To survive a motion to dismiss the Rule 10b–5(a) and (c) claims, plaintiffs must plead that "(1) they were injured; (2) *in connection with the purchase or sale of securities*; (3) by relying on a market for securities; (4) controlled or artificially affected by defendant's deceptive or manipulative conduct; and (5) the defendants engaged in the manipulative conduct with scienter."[11] Bevilacqua Defendants are not alleged to have engaged in any manipulative conduct until after plaintiff already had sold, or was in the process of selling, all of his Company shares. Plaintiff cannot maintain an Exchange Act claim with respect to anything that occurred after he last purchased or sold Company shares.

Plaintiff's attempt to rely on a control-person theory likewise is deficient. To state a legally sufficient control-person claim under the Exchange Act, a plaintiff must allege facts that, if true, would "show a primary violation by the controlled person and control of the primary violator

---

[10] Company Decision at 5.

[11] *In re Global Crossing, Ltd. Secs. Litig.*, 322 F. Supp. 2d 319, 329 (S.D.N.Y. 2004) (Lynch, J.) (quoting *In re Initial Pub. Offering Secs. Litig.*, 241 F. Supp. 2d 281, 385 (S.D.N.Y. 2003)) (emphasis added).

by the targeted defendant,"[12] possibly in addition to other elements. Here, there is no legally sufficient primary violation claim at least because all of the Exchange Act claims against the controlled person or persons are time barred for the reasons stated in the Company Decision. Nor has plaintiff alleged facts sufficient to permit a finding that Bevilacqua Defendants controlled any relevant person. An allegation that they were the Company's outside counsel and had some undefined and unquantified equity position in the Company's external manager simply does not do it.

Finally, plaintiff's allegation that Bevilacqua Defendants acted with *scienter* is entirely conclusory. It does not remotely approach sufficiency on any basis, let alone the requirements of Federal Rule of Civil Procedure 9(b). This is fatal not only to plaintiff's Exchange Act claims, but also to his common law fraud claim.

### *Conclusion*

For the foregoing reasons, Bevilacqua Defendants' motion to dismiss the SAC (Dkt 47) is granted in all respects.

SO ORDERED.

Dated:     April 18, 2026

_____
Lewis A. Kaplan
United States District Judge

---

[12] *City of Westland Police and Fire Ret. Sys. v. MetLife, Inc.*, 129 F. Supp. 3d 48, 89 n.266 (S.D.N.Y. 2015) (LAK) (quoting *SEC v. First Jersey Secs., Inc.*, 101 F.3d 1450, 1472 (2d Cir. 1996)).